HENRY H. ISHAM, appellant,

*v.*

JOHN W. COOPER and JOHN W. FOWLER, respondents.

[Filed February 28th, 1898.]

When, on the face of a written instrument, it is doubtful whether a person's initials, written by him, were intended to witness an interlineation, or to be incorporated in the instrument as part of the interlineation, a question is presented over which a court of law has jurisdiction, and which may be decided on extrinsic parol evidence.

On appeal from an order advised by Vice-Chancellor Emery, who delivered the following opinion :

This is an application for a preliminary injunction to restrain further proceedings in an action at law, in which defendants have obtained a verdict against complainant, and a rule to set aside the verdict has been discharged by the supreme court. The action at law was commenced by attachment proceedings against the complainant, in which he appeared and gave bonds, and a preliminary injunction against the prosecution of this bond is also applied for. The principal question involved on this application for injunction is, whether the grounds now relied on by complainant to enjoin the collection of the judgment on the verdict were set up as defences and decided adversely to the complainant in the action at law, and in the view which I take of the case, the granting or refusal of the preliminary injunction depends upon the decision of this question. A statement of the proceedings in the action at law is necessary, in order to determine whether after the verdict of the jury the complainant still has a right to apply for equitable relief. The entire record in the suit at law, including the evidence taken at the trial, is made part of the record on this application, by complainant's filing it with the bill, and so far, therefore, as relates to the decision of the question of the effect of the verdict at law, the entire case of complainant and defendant seems to be pre-

sented as fully as it could be on final hearing. The action at law was one of contract, and was founded upon a letter dated February 8th, 1894, written by the complainant, Henry H. Isham, to the defendants, Fowler and Cooper, signed by the complainant, proposing the terms upon which complainant would assume the management of the affairs of a corporation (the Fowler Company) of which Fowler and Cooper were officers, and which then needed financial and other assistance. By a letter of the same date, written to Isham, and signed by Fowler and Cooper, the latter accepted the terms, and the complainant's letter and its acceptance constituted, or was claimed to constitute, a contract between the parties. At the time of the writing of the letter, certain notes for $20,000 of the Fowler Company, endorsed personally by Fowler and Cooper, were outstanding in the hands of a bank which had discounted them. The letter or contract as sued on contained a clause relating to these notes, and Fowler and Cooper claimed that this clause in the letter signed by Isham read as follows, viz.: "That the Fowler Company notes now indorsed by you shall be renewed and reindorsed when they mature, and shall be cared for by the company and H. H. I. until the company is able to care for them itself." They brought suit on the letter as containing this clause, and to recover the amount they had been eventually obliged to pay on the Fowler Company notes, or their renewals, being over $13,000. As appears by the pleadings, bill of particulars, and specification of defences in the cause, the dispute between the parties, so far as relates to the form of the contract, was whether this clause of the letter had been altered after its execution.

Isham, in his specification of defences, as to this point, claimed that this clause had been altered and was not his contract, but was null and void. The clause in the letter as delivered, according to Isham's claim, was as follows (including the interlineations as actually made):

"That the Fowler Co. notes now indorsed by you to the extent of $20,000, shall be renewed and reindorsed when they mature, and shall be cared for the company and by      (H. H. I.) by you until the company is able to care for them itself."

And the alteration claimed consisted ·in the erasure of the word " you " after the carat. In this specification of defences, it will be observed that the initials " H. H. I." were included in a parenthesis placed at the side of the sheet, and not immediately following the words " and by," but there was no claim in the specification of defences that the initials were intended to indicate an alteration, or that by mistake the initials were so placed in the letter as to admit of being read into the text as part of the letter or contract. In the letter itself, these initials in fact immediately followed the word " by." On the trial of the cause, it appeared by the undisputed evidence on both sides .that the disputed clause of the letter as originally written by Isham to Fowler and Cooper read, the notes " shall be cared for by you," without any interlineation or erasure. It was also shown by the evidence on both sides that alterations were made in the letter at the interview held immediately after the receipt of it by Fowler and Cooper, at which interview Isham, Fowler, Cooper and also Judge Gilhooly, the counsel of the company (and no others), were present. The main question of fact at the trial at law was as to the alterations which were then made in the letter in the presence of all these parties. Mr. Isham and Judge Gilhooly testified as to the conversation, previous to the alterations, and as to the purpose of making the alterations, which were then declared, and as to the alterations actually made after these conversations, for the purpose of carrying out the changes in the letter which were agreed on. Mr. Isham and Judge Gilhooly testified substantially that the alteration, and the only alteration in the letter itself, was the interlineation of the words " the company and by " after the word " by," and before the word " you," so that the letter as altered read, the notes shall be cared for " by the company and by you " (Fowler and Cooper). They both further stated that this alteration was actually made by Isham himself, after the conversation between the four persons, in reference to making alterations in the letter, and that the alteration thus testified to was the only alteration to be made in the letter itself. As to the initials " H. H. I.," these two witnesses stated that these were made after the altera-

tion of the letter had been made as agreed on, and that the initials were added by Isham, at the suggestion of Judge Gilhooly, solely for the purpose of noting or identifying the interlineation. This suggestion, they stated, was made in the presence of both Fowler and Cooper, and Isham then, in their presence, added the initials immediately following the words "and by," in the interlineation *previously* made, and delivered the letter to Fowler and Cooper, the letter at the time of delivery, according to their statement, containing the word "you," after the carat, unerased. Fowler and Cooper, on the other hand, after having given a different account of the conversation preceding the actual alteration, and of the object of the alteration, said that the entire alteration in its present form, including the initials, was written by Isham at once, who, at the same time, erased the word "you," and that the letter was delivered to them in the form in which it now appears. Cooper's statement in his direct evidence, as to the object of the alteration, was that he said to Isham, "I want something specified there to show that you are to take care of that paper when it comes due," and that then, after a question to Judge Gilhooly, Isham wrote in the interlineation, "to be cared for by the company and H. H. I.," and scratched out the word "you." On cross-examination, being asked as to the language of his objection to the letter, he stated, "I wanted Mr. Isham to take care of that note, and wanted something put in that instrument so that he would take care of it;" and that Judge Gilhooly did not, as he remembers, say anything after the alteration had been made by Isham, except that it was all right. Fowler's statement on this point is substantially similar. No objection was made on either side to the admission of the evidence relating to the circumstances under which the initials were written, or to the object of writing them. Nor does the attention of the court or counsel on either side seem to have been specially directed during the taking of the evidence to any supposed objection that, in a court of law, the initials H. H. I. must be read into the contract, as a part of the contract, independent of the intention of all the parties in their insertion, or to any objection that for the correction of a

26

mistake in so locating the initials that they might be read as part of the contract, instead of a mere notation of an interlineation, the remedy of the defendant was to apply to a court of equity to correct the mistake. On the contrary, the statements of the four witnesses were received as to the entire transaction, relating to the alteration of the contract, and the intentions with which all the alterations were made, and the initials were placed on the paper. In charging the jury, the learned justice (whose charge is set out in full on the record) stated that the disputed question between the parties was what alteration was made ; and after giving a statement from the plaintiff's evidence, substantially as above, gave Judge Gilhooly's statement of the entire alteration, as follows : " Then Isham took his pen and interlined the words ' the company and by,' making it read ' by the company and by you.' " Judge Gilhooly then suggested that Isham should put his initials, H. H. I., to witness the alteration. Isham substantially testifies in the same way. Fowler and Cooper as positively assert that Isham agreed to be responsible for the note, and that Isham then wrote in the interlined words as they now appear, and also erased the word " you." The plaintiffs say Isham did alter it as it now is. Isham says he did not. The question is, " which statement will you accept under the evidence ? " The justice, after calling attention to the special facts appearing in the case, bearing upon the main issue, then said that all these and the other evidence in the cause must be considered, and that the jury must settle " whether you will accept the evidence on the part of the plaintiff or that on the part of the defendant." The complainant's counsel do not claim that up to this point the rules of law, as laid down by the justice at the trial, required the jury to read the initials H. H. I. into the contract, as part of it, but they insist that this was the effect of a subsequent refusal to make a special charge which they requested him to make. The defendant requested the judge to charge " that if the jury shall be satisfied from the evidence that the initials H. H. I. were inserted in the letter of February 8th, 1894, for the purpose of noting an interlineation, then the plaintiffs are not entitled to

recover in this action." This charge was refused, not in abso-
lute terms, but refused "except as charged," and to this an ex-
ception was taken. On the application for a new trial, it was
claimed in reference to this refusal, that it was an error of law,
for the reason that whether the word "you" was crossed out by
Isham or not, he could not be held unless the initials were
written as part of the text. In reference to this, as well as the
other legal points raised, no error was found by the supreme
court, and the rule was discharged. The complainant claims
formally by his bill, that this refusal to charge, "in effect de-
clared that that purpose for which complainant's initials H. H. I.
were inserted, could not be considered in a court of law," and
that by reason of this ruling, affirmed on application for new
trial, complainant's defence, arising out of this alleged mistake
in placing his initials where they could be read into the contract,
was in fact overruled as an equitable defence not admissible at
law. This overruling of an equitable defence, not available at
law, is the special equity upon which complainant applies to a
court of equity, notwithstanding the verdict, for relief, and on
the general jurisdiction of a court of equity to reform mistakes
in written instruments. The affidavits to the bill and the
answer under oath, so far as relates to the circumstances of the
alteration, and to the statements made as to the object of the in-
sertion of the initials in the letter, present substantially the same
case on each side as presented at the trial at law, except possibly
in the following particular : In the affidavits to the present bill,
it is stated by Isham that there was no margin to the paper in
which to place the initials, and that they were underscored by
him with the object of parenthesizing them. In the evidence
at the trial I have not found this statement of the reason of the
location of the initials, or of the underscoring, given by either
Mr. Isham or Judge Gilhooly. This is, however, a matter of
detail, and so far as relates to the facts at issue, the defendants
here place themselves substantially upon the same ground taken
by them in the suit at law; and they set up specially by their
answer that the verdict and proceedings at law are conclusive
upon the facts now in issue on this bill, and pray the same bene-

fit thereof as if the verdict and judgment had been pleaded. In relation to obtaining the benefit of a former adjudication, our practice, as I understand it, permits the defence to be raised by answer as well as by a formal plea, following in this respect the general rule of the American courts. *Lyon* v. *Talmadge, 14 Johns. 501, 511; Black Judg.* § *783.*

And the defence of former adjudication being in its very nature a preliminary question in the cause, which should regularly be disposed of before proceeding to examine the evidence anew on the merits, the proper practice would seem to be, that where this preliminary question on the record is ripe for decision, on the application for preliminary injunction, and no special reason appears for reserving the decision of the question until final hearing, the question should be disposed of as a preliminary question on the motion for preliminary injunction. This was the course taken by Chancellor Williamson in *Brown* v. *Lexington and Danville Railroad Co., 2 Beas. 191 (1860).* An injunction was here dissolved on motion upon the ground (among others) that the claims and issues involved in the cause had been virtually decided in a prior suit between the parties in another state. The judgment in that case was obtained in another state, and had not been formally pleaded as a bar, but it appeared on the record, and Chancellor Williamson says (at *p. 196*), "this court, sitting as a court of equity, ought not to permit a party who has had his rights fully investigated and decided in a court of equity in another state to avoid a final decision in that tribunal, and to raise the same questions upon the same facts, and to ask a reinvestigation at the hands of this court." He, therefore, considered the question of *res adjudicata* on motion to dissolve injunction, and dissolved the injunction and dismissed the bill upon this ground. If a preliminary injunction in the present case would, under this practice, be dissolved on motion and the bill dismissed it would seem to be clear that no preliminary injunction should go, but that the application should be refused. So far as relates to the effect of the verdict, the case has been fully presented on both sides, and in view of the fact that the entire proofs, which would be relevant to this point on final

hearing, seem to be presented on this application as fully as they would be presented on final hearing, it is a case where, in the interests of all parties, this preliminary question should be disposed of on this application instead of deferring decision upon it until final hearing, where it will still remain as the preliminary question after the taking of evidence on the issues. This course will also probably enable the parties, with the least delay, to obtain a decision on appeal on this preliminary question. I will therefore proceed on this application to consider and dispose of this question on this application. Where the defence is clearly an equitable one, which could not be made available at law, it is entirely settled that a court of equity can relieve against a verdict obtained purely on the legal liability. *Cairo and Fulton Railroad Co.* v. *Titus, 12 C. E. Gr. 102,* and cases cited, p. 106, approved on this point on appeal, *S. C., 1 Stew. Eq. 269, 270 ; Holmes* v. *Steele, 1 Stew. Eq. 173, 176 ; Smalley* v. *Line, 1 Stew. Eq. 348, 352 (Chancellor Runyon, 1877). Borcherling* v. *Ruckelhaus, 4 Dick. Ch. Rep. 340 (Errors and Appeals, 1892),* also decides that where the defence offered at law is overruled at the trial as being in fact an equitable and not a legal defence, the verdict and judgment is not an estoppel to a bill based on the equitable defence to be relieved against the verdict, and that the ruling of the court of law at the trial may be accepted as final on the question of its admissibility at law, without taking the review of a higher court on exception and error. The ruling of the trial judge, which is here relied on as having the effect of overruling the equitable defence offered by complainant, was sustained on review by the higher court, and must therefore undoubtedly be taken as the law of the case. The crucial question in the case, however, is whether this refusal to charge, so sustained, can, under the circumstances of the trial shown by the entire evidence and charge, be fairly construed to have been a ruling that in a court of law the initials must be read into the contract as part of it, or to have overruled the defence set up that the initials were so placed by mistake. This alleged mistake in the location of the initials is the only equitable defence or claim on which an injunction can now be based.

For although a court of equity may have jurisdiction to declare an instrument forged, and to order it to be delivered up—*Peake* v. *Highfield, 1 Russ. 559,* and cases cited (*Gifford, M. R., 1876*)— yet the issue of forgery is generally sent to a jury in such cases, and in this case the verdict of the jury is plainly final in favor of the plaintiffs on the question of forgery, which can, as it seems to me, no longer be controverted either alone or in connection with the question of the mistake.

Proceeding, then, to the consideration of the question whether the equitable defence of mistake in locating the initials was overruled by the refusal to charge, it is clear as a starting point that it was not in terms a ruling to the effect that the initials must in the court of law be read into the contract as part of it, and that the question of the intention of placing them could not be admitted. No such claim is made, nor can it be claimed that any such rule of evidence was applied at all in this case, or that the complainant was prevented in the trial at law from giving as fully as he has here given on his affidavits to the bill his entire case as to the identity of the paper signed, and as to his intentions in placing his initials upon the paper, as well as in relation to the erasure, and in refusing to charge the justice did not refuse absolutely, but only refused "except as he had charged," thereby against giving to defendant the benefit of his evidence on this point. This refusal, as it seems to me, certainly was not intended by the justice as instructing them that they must read the initials into the contract, notwithstanding the defendant's evidence. I do not think it could have been so interpreted by the jury, nor does it seem to have been presented by counsel to the supreme court as having that effect.

The objection to this ruling as there taken by the briefs of counsel, which have also been submitted to me as part of the record to be considered on this application, was that by the refusal the justice failed to give to defendant the benefit of a ruling to which he was entitled; viz., that he could not be held unless the initials were read into the contract, whether the erasure of the word "you" was afterward made or not, and that by this refusal the effect of the erasure was thereby magni-

fied, and the jury misled. But it was not at all claimed by defendant's counsel in the briefs that the ruling had the effect now insisted on of requiring the jury, in a court of law, to read the initials into the contract without regard to the evidence of their intent and purpose. In reference to this refusal to charge, no error was found by the supreme court, but no opinion was filed, so that there was no express adjudication or ruling by the supreme court that the refusal to charge had the effect now contended for, or that if so construed it properly declared the law. There is, therefore, on the record of the case at law nothing to show that the rule of legal evidence, now claimed to have been applied, was expressly laid down, either at the trial or by the supreme court, and even on the assumption that this court is entitled in this case to infer or deduce such reading, in the absence of an express declaration to that effect by the court of law, it is certain, I think, that such deduction or inference must appear to be fairly warranted on a consideration of the whole case on the point in question as presented at the trial. Upon such consideration I do not think the ruling in question, or its affirmance, can be considered as having the effect now claimed. Considering the present application in its entire scope appearing from the record the complainant's situation, stated in its most favorable aspect, seems to be as follows : He was sued at law upon a written instrument, in relation to which he had two defences—mistake in locating his initials in one portion of the contract, and alteration after execution of another portion. Without applying to a court of equity to take jurisdiction as to defence of mistake, either alone or as drawing to it also the jurisdiction to direct a delivery up of the altered instrument, he set up at law on the record the single defence of alteration. The case as presented by both sides at the trial was one in which the direct evidence on the two points of initials and erasure was necessarily intimately connected and interwoven—and defendant's evidence produced at the trial embraced all of his direct evidence relating to mistake as well as to alteration, which was received without objection, and the jury were clearly directed by the trial justice that if the evidence for defendant was believed no action

at law was sustainable.    The justice refused to direct the jury that defendant's evidence as to mistake, if believed, created a primary and separate cause of defence, independent of the defence of alteration, but did not withdraw the defence of mistake in connection with the defence of alteration, as one entire defence, from the jury; and, on the contrary, again expressly instructed them to find in favor of the defendant to the action if his statements as to the execution of the instrument (which included both mistake and alteration) were believed, the jury found a verdict against defendant, and on review of this verdict complainant claimed that the defence of mistake was a separate and primary defence to the full benefit of which defendant was entitled, and that the trial judge by the refusal to charge had deprived him of the benefit of this defence to this extent.    The court on review found no error at law or misdirection in the manner of submission.    The complainant now applies for equitable relief against the verdict, on the ground that the defence of mistake was overruled at law.    The relief in equity must be granted, if at all, by the trial separately of the defence of mistake, for as to the defence of alteration the verdict of the jury is clearly final and conclusive.    If this be the correct statement of the case, then, as it seems to me, it is clear that the present application to equity is really based, not on the fact that the defence of mistake was overruled at law as being an equitable defence only, but that the trial court, after admitting the defence as a defence at law, failed to give it the full separate effect to which the defendant in the action claimed it was entitled in this particular case, when once admitted as a defence in the court of law.    The court, on review, held that this course was not erroneous at law, but did not declare that the evidence relating to mistake was not admissible at law, and on the whole case refused to disturb the verdict.    To grant now in equity a retrial of the case solely upon the separate defence of mistake would be, as it seems to me, a review of the correctness of the decision of the supreme court as to the manner in which the defence of mistake, when once admitted in a court of law, should be treated in connection with other defences, rather than an instance of exercising the undoubted jurisdiction of a court

of equity to sustain an equitable defence which is not admissible and has been overruled at law.

The defence of mistake in this particular case has been by the conclusive action of the court of law substantially held to be a defence concurrent at law and in equity, and it has been admitted as such.

The treatment of this defence by the court of law after admitting it as a legal defence may be ground of error, but cannot be ground of retrial of the defence in equity for the purpose of correcting this supposed error of the court of law. I am of opinion, therefore, that the only question of fact which can now be relied on as a basis of equity jurisdiction has been substantially tried in a court of law, and the verdict is final upon this court so far as this question is concerned.

The application for preliminary injunction is therefore refused, and the order to show cause is discharged.

*Mr. Joseph Cross* and *Mr. Charles L. Corbin*, for the appellant.

*Mr. Richard V. Lindabury*, for the respondents.

The opinion of the court was delivered by

Dixon, J.

This is an appeal from an order of the chancellor refusing to grant a preliminary injunction to restrain the defendants from enforcing a judgment, which they had obtained against the complainant in the supreme court of this state.

The judgment was based upon a contract which, it was claimed, the complainant had made by placing his initials upon a written document. The bill alleges that the complainant placed his initials there, not for the purpose of contracting, but only to attest an interlineation then made upon the instrument; that his placing them in such a position as to lead a court of law to read them into the contract, was the result of inadvertence and mistake, from which the court of chancery should give him relief. The answer avers that, in the trial at law, upon which the judgment was rendered, the complainant likewise insisted that he had placed his initials upon the instrument, not for the

purpose of contracting, but merely to attest the interlineation, and relied upon that proposition of fact as a legal defence to the suit; that the trial court accepted the proposition as a legal defence and submitted its truth to the jury, who, by their verdict, found it to be untrue; and the defendants thereupon insist that the fact is *res judicata* against the complainant, and cannot be retried in equity.

In response to this, the positions of the complainant are, first, that the question of fact was not tried at law, and second, that even if it was, it presented an issue over which a court of law had no jurisdiction, and hence the decision of that court is not binding upon him.

As to the first position it must suffice to state that, after examining carefully the evidence submitted on the motion for injunction, including the proceedings on the trial at law, we think the averments of the answer are substantially correct.

As to the second position, it is not now necessary to decide whether, when at the instance of a defendant, a court of law has received a proposition of fact as a legal defence, and because of its untruth has rendered judgment against him, a court of equity should, at the instance of the same party, determine for itself whether the proposition was admissible as a legal defence, and, if it answers that question in the negative, should interfere with the judgment, because the proposition, if true, constitutes an equitable defence, for the order under review can properly be supported on the ground that the proposition set up in this case was, if true, a legal defence.

In *Kean* v. *Davis, 1 Zab. 683*, Chief-Justice Green, delivering the opinion of this court, sitting as a court of law, declares that the cases "fully establish the principle that when it is doubtful on the face of the instrument whether it was designed to operate as a personal engagement of the party signing it, or otherwise, parol evidence is admissible to show the true character of the transaction;" and upon that principle this court reversed a judgment, because, at the trial in a law court, evidence offered by the defendant to show in what capacity he had written his signature upon the instrument, was rejected.

An inspection of the writing now in controversy satisfies us that it is doubtful on the face of the instrument whether the complainant's initials were written by him for the purpose of binding him to a contract, as the defendants claim, or for the purpose of attesting an interlineation, as he claims.

The initials appear in the body of a letter addressed by the complainant to the defendants, and the important words are written as follows: "and shall be cared for by the company until," &c.

On the suggestion being made, the probability is perceived at once that the initials may have been written with either intent, and which actually existed must be decided on extrinsic evidence. No doubt, in reaching a decision, the mind would be strongly influenced on ascertaining whether the word "you" was crossed out when the initials were written or afterwards, but this latter question would not be the same question as the former; it would be only subsidiary, and we think it was so treated at the trial.

Our conclusion is, that the question of fact between these parties was submitted by them to the appropriate tribunal, and its judgment thereon precludes further controversy.

The order appealed from is affirmed.

_For affirmance_—THE CHIEF-JUSTICE, DIXON, GARRISON, GUMMERE, LIPPINCOTT, LUDLOW, VAN ·SYCKEL, ADAMS, BOGERT, HENDRICKSON, KRUEGER, NIXON, VREDENBURGH—13.

_For reversal_—None.