## McGarity et al., Executors, Appellants, *v.* New York Life Insurance Company.

Argued April 21, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Harry J. Alker, Jr.*, for appellants.

*Harold Scott Baile*, with him *Joseph S. Conwell, Ronald B. Swinford, Ferdinand H. Pease* and *Pepper, Bodine & Stokes*, for appellee.

OPINION BY MR. JUSTICE HORACE STERN, May 26, 1948:

In this case the sole question—purely a factual one—is whether the death of William J. McGarity, Jr., resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause, and not from physical or mental infirmity or directly or indirectly from illness or disease of any kind.

The action is brought by McGarity's executors on two policies of insurance issued to him by defendant

company. These policies insured his life in the aggregate sum of $15,000 and that amount was paid by defendant, but each of the policies contained an additional provision for the payment of double indemnity benefits if his death resulted in the manner above stated. The present suit was brought to recover this additional indemnity of $15,000.

The facts are these: McGarity, in the afternoon of June 24, 1944, was operating a Buick automobile westwardly on the northerly side of Atlantic Avenue in Margate, New Jersey. While he was proceeding straight ahead the horn of his car, which was operated by means of a metal rim on the steering wheel, suddenly started and continued to blow. The car, after going forward a distance of some 200 feet, swerved sharply to the left, went diagonally across the street and jumped over the double line of trolley tracks in the center of the highway; these were elevated somewhat above the bed of the street, the area between the rails and between the tracks being filled in with rough stone ballast. The car continued across the southerly side of the street, hurdled the south curb, went over the lawn of a private property occupied by a Mrs. Clasby, and crashed against her house, whereupon the horn stopped blowing. As the car was passing over the trolley tracks Mrs. Clasby, looking out the window, saw McGarity with his head sunk down and his arms lying flat across the wheel and resting on the device operating the horn. When removed from the automobile he was in an unconscious condition; he was taken to the hospital and died there eight hours later. His visible injuries consisted of a laceration of the left cheek and eyebrow, and the left eye was completely dislodged from its socket. There was a chipped fracture of the supra-orbital ridge of the left frontal bone; an autopsy which was performed several months after his death revealed several areas of hemorrhage in the central portion of the brain but the exterior surfaces of the brain were not lacerated or otherwise injured in any way.

At the trial the theory presented by plaintiffs was that the death of the insured was caused either by a severe surgical shock following the fracture of the frontal bone, or by the hemorrhages, and that the latter, in turn, were caused by the accident. The theory of defendant was that the death resulted from the hemorrhages, but that these occurred while the insured was operating the car, producing unconsciousness and causing him to lose control, and that they were due to chronic alcoholism from which he had suffered off and on for several years. Defendant presented testimony that on one occasion he had had convulsive seizures because of a cerebral edema and a resultant increase of intercranial pressure; furthermore that he suffered from a fatty cirrhosis of the liver, a condition also attributed to alcoholism. Defendant contended that the accident itself, so far from being the sole cause of the insured's death, was not even a contributing factor. The issue being submitted to the jury, that body found in favor of defendant; plaintiffs' motion for a new trial was refused and their present appeal is from the judgment entered on the verdict.

An examination of the record indicates not only that none of the reasons assigned for a new trial is of any substantial merit, but that the verdict rendered by the jury was so obviously proper on the basis of the testimony that the court would have been justified in granting defendant a new trial had the verdict been otherwise. Plaintiffs admitted that the brakes of the automobile were in good condition and although it was claimed that because of some defect in the steering apparatus the car had a tendency to pull to the left this would not account for the failure of the insured, had he been in possession of his normal mental faculties, to stop the car, either by putting on the brakes or turning off the ignition, before it had traversed the rough and circuitous path which it followed across the highway and sidewalk; moreover Mrs. Clasby's testimony as to

the position of the insured over the wheel and the resulting prolonged blowing of the horn showed clearly that he must have suffered some sudden attack of illness. As to the testimony of the medical experts produced by the respective parties, both Dr. Moon and Dr. Smith, who, testifying on behalf of defendant, rendered an opinion that the hemorrhages of the brain had occurred spontaneously and not from trauma and were the cause and not the result of the accident, gave their testimony as the result of the autopsy which they had performed, whereas none of the medical witnesses called by plaintiffs—Doctors Leonard, Riggs, Wilson and Eiman—were present at the autopsy or ever examined the body of the insured at all, except that Dr. Leonard made an external examination when the insured was first brought into the hospital. It is also highly significant that Dr. Smith, although it was the family of the insured who engaged him to participate in the autopsy with Dr. Moon, was obliged, as the result of his findings in that operation, to advise their counsel that he could not sustain a claim that the accident was the sole cause of death, but that, on the contrary, he was of opinion that the insured had suffered a cerebral hemorrhage which antedated the accident and must be considered a causative factor, although he added that the accident had affected this condition to some exent and had thereby *contributed* to the death; at the trial he was called to the witness-stand by defendant and, in substance, supported the testimony of Dr. Moon. Far, therefore, from the verdict being against the weight of the evidence as plaintiffs contend, the testimony failed utterly to sustain the burden placed upon them of showing, as they were required to do in view of the conditions stated in the policies, that the death was caused solely by external and accidental means, and, in view of the fact that the proof pointed to a preëxisting disease or physical infirmity which may have been a contributing factor, of excluding that possibility: *Rodia v. Metropolitan Life*

*Insurance Co.*, 354 Pa. 313, 47 A. 2d 152; *Frame v. Prudential Insurance Co. of America*, 358 Pa. 103, 56 A. 2d 76.

Complaint is made that two of plaintiffs' expert witnesses were not allowed by the trial judge to express their opinions as to the cause of death. The rulings of the court in that regard, however, were based on the fact that these experts were either unable or unwilling, in forming their opinions, to take into account the condition of the insured's health immediately prior to the accident and the circumstances in connection with the happening of the accident which threw light upon that condition. The question at issue was not merely whether the death of the insured was due to trauma but whether it was due *solely* thereto, and, therefore, any expert opinion which disregarded the testimony indicating the likelihood of other causative factors might have misled the jury in regard to the one question to be determined. Hypothetical questions may always be prohibited if they are likely to confuse the jury because of their omitting significant facts which should be taken into consideration, having regard to the real issue: *Sweeney v. Blue Anchor Beverage Co.*, 325 Pa. 216, 221, 189 A. 331, 333, 334; Wigmore on Evidence, 3d ed., vol. 2, § 682, pp. 808-810. It may be added that notwithstanding the restrictions placed by the court in this case on the testimony of plaintiffs' expert witnesses, the jury must have realized, from the examination and cross-examination which the court did permit, that it was the opinion of those experts that the death of the insured resulted from trauma and not from preëxisting disease or infirmity.

Plaintiffs objected to the admission in evidence of the depositions of Mrs. Clasby, an out-of-State resident, because they were taken in pursuance of an order of the court in a former trial of the case without the twenty days' notice prescribed by the Act of June 25, 1895, P. L. 279. This was justified, however, by the Act of June 8,

1911, P. L. 709, which places the regulation of the amount of notice within the discretion of the court. As this testimony was taken more than two months before the present trial plaintiffs were afforded adequate opportunity to supplement it had they so desired; their counsel were present when Mrs. Clasby was examined and subjected her to a vigorous and exhaustive cross-examination.

There was placed in evidence in the present proceedings correspondence between Mrs. Clasby's lawyers and counsel for plaintiffs in connection with a claim which Mrs. Clasby had asserted for damage to her property caused when the car of the insured struck her home in the collision which preceded his death. In this correspondence counsel for plaintiffs denied their clients' liability for the accident because, as they said, their information was that McGarity had been seen to slump at his wheel, apparently unconscious from a heart seizure prior to the accident, and they cited legal authorities to show that under such circumstances he was not responsible for the accident which followed. Counsel were clearly acting within the scope of their authority in making such a statement, and therefore, it being pertinent to the present issue, it was admissible in evidence with the same force and effect as if it had been made directly by plaintiffs themselves: *Truby v. Seybert*, 12 Pa. 101; *Floyd v. Kulp Lumber Co.*, 222 Pa. 257, 268, 71 A. 13, 15; *Muzychuk v. Yellow Cab Co.*, 343 Pa. 335, 341, 22 A. 2d 670, 673; *Cherry v. Mitosky, Administrator*, 353 Pa. 401, 406, 45 A. 2d 23, 26.

Plaintiffs complain that they were deprived of a fair trial by reason of allegedly prejudiced remarks made by the trial judge and because of an apparently hostile attitude on his part during the trial. While it is unfortunately true that the record indicates that the trial was marred by acrimonious interchanges between the trial judge and counsel for plaintiffs which might well

have been avoided, we cannot say that the verdict rendered by the jury was influenced by any petulance displayed by the court, especially because, as already stated, any other verdict would clearly have been contrary to the weight of the evidence.

Judgment affirmed.