**Rizzo v. Rohrback**

*Barton A. Haines*, for plaintiff.
*Francis E. Shields*, for defendant.

TAKIFF, *J.*, January 23, 1978—This is defendants' motion for summary judgment in a trespass

action alleging medical malpractice brought by Frank and Lena Rizzo against the estate of Dr. Henry Wycis and the St. Luke's and Children's Medical Center.

The medical and hospital care alleged to have been negligently rendered was administered to Frank Rizzo in an effort to treat and cure injuries sustained by him in an automobile collision which had occurred on September 20, 1968.

Briefly, Frank is described as having suffered a "whiplash" type injury when his car, stopped at a red light, was rear-ended by a police car operated by a policeman employed by the City of Philadelphia. He received conservative treatment for about three years, during which time he tried to continue working as a police officer but finally quit because of continued pain in his neck and back.

He was referred to Dr. Henry Wycis who, after treatment, operated on Frank in September, 1971, at St. Luke's and Children's Medical Center. Further surgical treatment allegedly aggravated plaintiff's condition which gradually deteriorated until he was partially paralyzed on his right side.

During the initial period while plaintiff was receiving conservative treatment, by complaint filed on July 2, 1969, he brought suit against the City of Philadelphia to recover damages for the injuries sustained in the motor vehicle accident. Following the surgical treatment by Dr. Wycis, on October 23, 1973, he filed the instant action claiming malpractice against St. Luke's and Children's Medical Center and against the estate of Dr. Wycis, who had died.

The case against the city was tried in April and May, 1975, resulting in a jury verdict for plaintiff in the amount of $450,000. That verdict was paid and the judgment entered thereon marked satisfied.

Previously, on February 20, 1973, the city had filed a petition to allow late joinder of defendant Wycis as an additional defendant in the first suit brought by Frank. After that petition was granted, Wycis filed preliminary objections to the joinder which were sustained by the court on May 23, 1973, on the basis of untimeliness and prejudice to the additional defendant and affirmed per curiam on appeal to the Superior Court. Similarly, St. Luke's and Children's Medical Center was joined some months later in the first action, pursuant to leave granted for late joinder on August 31, 1973, only to be released upon preliminary objections sustained by order of April 2, 1974. See Rizzo v. City of Philadelphia, 67 D. & C. 2d 666 (1974).

Defendants have filed the present motion for summary judgment based upon the disposition of the earlier action against the city alone.

Several theories have been asserted as grounds for summary judgment and we shall discuss them seriatim: (1) Whether plaintiff's attorney's statements, made in closing argument to the jury in the first suit, that "there is no negligence" on the part of Dy. Wycis, are conclusive judicial admissions which operate to bar plaintiff's cause of action for negligence against Dr. Wycis; (2) Whether the verdict, judgment and satisfaction in the motor vehicle action against the city constitutes a bar to the instant malpractice action against the defendants; and (3) Whether plaintiff's attorney's assertion in his closing argument to the jury in the motor vehicle action that he would not and could not sue Dr. Wycis or "anyone else" estops plaintiff from prosecuting the present cause of action.

Because we answer the second and third questions in the affirmative, defendants' motion for summary judgment will be granted.

## 1. JUDICIAL ADMISSIONS

A judicial admission is an admission made on the record in the course of a judicial proceeding and is competent as evidence in the same case or in another case: Associates Discount Corp. v. Kelly, 169 Pa. Superior Ct. 74, 77, 82 A. 2d 689 (1951).* It may be made either by a party himself, by a privy, or by his counsel acting within the scope of his authority.

Here, there is little question that Rizzo's attorney was within the scope of his authority in making closing argument to the jury. Under such circumstances, the statements are admissible with the same force and effect as though they had been made directly by plaintiff: Jones v. Piper Aircraft Corp., 18 F.R.D. 181, 183 (M.D. Pa. 1955) (applying Pennsylvania law); McGarity v. N.Y. Life Ins. Co., 359 Pa. 308, 314, 59 A. 2d 47 (1948).

Nevertheless, such admissions do not include

---

*McCormick distinguishes between evidential admissions and judicial admissions as follows: "When we speak of admissions, without qualifying adjective, we customarily mean evidential admissions, that is, words oral or written, or conduct of a party or his representative offered in evidence against him. These *evidential* admissions are to be distinguished from *judicial* admissions. Judicial admissions are not evidence at all, but are formal admissions in the pleadings in the case, or stipulations, oral or written, by a party or his counsel which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. Thus the judicial admission, unless it should be allowed by the court to be withdrawn, is conclusive, whereas the evidential admission is not conclusive (unless the adversary should fail to meet it with contrary evidence) but is always subject to be contradicted or explained." McCormick's Handbook of the Law of Evidence, Ch. 26, p. 630, 2d Ed. 1972 (emphasis in original).

legal conclusions: Jones, supra, at 183, fn. 4. And "negligence," or the absence thereof, referring to the conduct of a third party, is per se a legal conclusion. Cf. Srednick v. Sylak, 343 Pa. 486, 492-93, 23 A. 2d 333 (1941); Pa. R. Co. v. Pittsburgh, 335 Pa. 449, 459, 6 A. 2d 907 (1939). But see McCormick, supra, at 632-633. Thus, plaintiff's counsel's statements as to Dr. Wycis's "negligence" could be viewed as a legal conclusion and thereby rendered inadmissible.

Furthermore, while a judical admission is considered to be conclusive on the party by whom it was made or to whom it is chargeable if made in the same case, in which event it constitutes a waiver of proof, 14 P.L.E. 524, §175, a party to an action is ordinarily not foreclosed by such an admission made in the course of another action: Jones, supra, at 183. The statements, therefore, by plaintiff's counsel made in closing to the jury in the earlier action, whether or not admissible because legal conclusions, would be evidential but not judicial admissions and hence not *conclusive* in this subsequent action. In our opinion this cannot suffice as a basis for summary judgment.

## 2. SATISFACTION AND BAR

Defendants contend that since the trial judge in the preceding action against the city charged the jury, as plaintiff requested, that it could hold the city liable not only for the initial accident injuries, but also for all of the injuries resulting from the subsequent medical treatment, whether negligently performed or not, the verdict returned was

intended to compensate plaintiff for all of his consequential damages including those against the instant defendants, and hence bars the present action. They support this contention with the fact that at trial much expert testimony was offered on the results of Dr. Wycis's surgical treatment of Frank Rizzo, as well as actuarial and economic testimony and documentary evidence on plaintiff's economic loss due to his resultant permanent disability. Defendants conclude from this that the verdict and judgment entered thereon represent the jury's calculations of damages for all of plaintiff's losses.

Plaintiff responds, however, that the trial judge in the earlier action also charged the jury that if it found the conduct of Dr. Wycis to be "extraordinarily" negligent, the city would then be relieved of liability for any damages resulting from such negligent treatment. Plaintiff reasons that since the verdict was "only" $450,000 and since plaintiff offered evidence that present and future lost earnings, future retirement benefits, and past and future medical expenses, reduced to present worth, alone amounted to $555,855, the verdict shows that the jury must not have compensated Rizzo for the sequelae of what they must have concluded was extraordinarily negligent conduct on the part of the doctor and the hospital. Therefore, plaintiff would have the court infer that the alleged malpractice was a wholly independent tort by virtue of the extraordinary negligence of defendants and, so reasoned, the present action is not barred by the earlier action and verdict.

The law is clear that an initial tortfeasor is liable for all harm proximately caused to plaintiff resulting from the original tort, including subsequent

medical treatment and harm resulting therefrom, even if that medical treatment be negligently rendered. See Nathan v. McGinley, 342 Pa. 12, 19 A. 2d 917 (1941); Wyatt v. Russell, 308 Pa. 366, 162 Atl. 256 (1932); Wallace v. Pa.R.R., 222 Pa. 556, 564, 71 Atl. 1086 (1909); see also Thompson v. Fox, 326 Pa. 209, 192 Atl. 107 (1937). The exceptions to this general rule occur when (1) plaintiff was negligent in his choice of doctor (not alleged here), or (2) the injuries from the medical treatment were caused by "extraordinary" or wilful medical misconduct. Cf., Restatement, 2d, Torts §457, 273, and comment d thereto (1965).

At the trial of the first action, plaintiff argued that there was no negligence, much less any extraordinary negligence, on the part of Dr. Wycis. Understandably, the city argued that there was extraordinary negligence. Evidence was offered at trial tending to support both contentions. However, since there were no special interrogatories submitted or special verdict requested, there is no way to ascertain with certainty exactly what the jury decided on this issue.

Under Pennsylvania law, where there are joint, concurrent or successive tortfeasors, a plaintiff has separate causes of action against each tortfeasor and may follow each one to judgment, choosing that judgment most satisfactory to him upon which to execute. However, once a judgment has been satisfied, that satisfaction operates as a bar to execution on other, previously obtained judgments and as a bar to prosecution of other, unlitigated actions for the same injury. See, e.g., Hilbert v. Roth, 395 Pa. 270, 272, 149 A. 2d 648 (1959); Brown v. Pittsburgh, 409 Pa. 357, 186 A. 2d 399 (1962).

This "one satisfaction" rule, however, clearly contemplates that the initial satisfaction can reasonably be construed as a full and true compensation for the claimed injuries. Although sometimes this appears to be a question of fact, where, as here, the satisfaction of judgment follows an adversary trial, it is suitable for determination by the court on a motion for summary judgment. Such a procedure has been elaborately explained in a well-reasoned and oft-cited opinion from our neighboring jurisdiction of New Jersey:

"Unlike the situation in the case of a release, the issue of whether a plaintiff who has received full satisfaction of a judgment entered against the original tortfeasors following a contested trial has received full compensation is not to be resolved by oral testimony. Rather, it is to be resolved from an examination of the record of the action against the original tortfeasors and a determination therefrom whether the judgment entered therein represented an award to the plaintiff for all the loss he sustained from the original injury, including that now alleged to have resulted from the alleged malpractice, or whether the recovery represented only the injury which resulted immediately from the automobile accident, independent of the additional harm caused him by the alleged negligence, mistake or lack of skill of defendant doctors and hospital. Cf. Wheat v. Carter, 79 N.H. 150, 106 A. 602, 603 (Sup.Ct. 1919), cited in Daily v. Somberg, supra, 28 N.J. at p. 384 [146 A. 2d 676] . . . .

"That issue is not to be resolved, as the opinion below directs (93 N.J. Super., at p. 540 [ 226 A. 2d at p. 469]), by having the jury in the malpractice case evaluate all plaintiff's 'injuries and damages

caused by all the tortfeasors' and comparing its evaluation with the $17,000 awarded by the jury in the automobile accident case. Such a comparison would be of no legal significance. The very nature of the process of admeasuring damages for personal injuries results in different juries reaching different results in evaluating the same injuries.

"The injuries for which plaintiff seeks recovery in the malpractice case are those set forth in plaintiff's answers to interrogatories and in the pretrial order. The injuries for which plaintiff recovered damages in the automobile case are to be ascertained by the court from an examination of the pertinent portions of the record in that case. Such portions of the record may include plaintiff's answers to interrogatories, the pretrial order, the testimony, the charge of the court and the opening and closing statements of counsel.

"The procedure to be followed is analogous to that used in deciding a plea of collateral estoppel in order to ascertain whether or not the issues sought to be presented in the instant case were presented at the former trial. . . .

"Since resolution of the posed question involves a study and comparison of the records in the two cases, the issue is to be tried by the court, not by the jury. Cf. 30A Am.Jur., Judgments, §458, p. 502; 50 C.J.S. Judgments §846, p. 420; see Robinson-Shore Development Co. v. Gallagher, supra, 26 N.J. at p. 68 [138 A. 2d 726]. The issue should be disposed of before trial of the merits of the malpractice action, Isham v. Cooper, supra, 56 N.J. Eq. at p. 404 [37 A. 462, 39 A. 760], and may properly be decided upon a motion for summary judgment." Knutsen v. Brown, 96 N.J. Super. 229, 232 A. 2d 833, 836-37 (1967). See also Vaca v. Whitaker, 86 N.M. 79, 519

P.2d 315 (1974); Cimino v. Alway, 18 Ariz. App. 271, 501 P.2d 447 (1972); cf., e.g., Hilbert, supra.

Decisional law has established a presumption which operates following an adversary trial on the merits:

"With respect to a satisfaction of judgment, however, particularly where, as here, it follows an adversary trial in which plaintiff proved his damages, it may more safely be assumed that the judgment does represent the true value of the claim and therefore, when the plaintiff has it marked satisfied of record, the common law assumption that he is satisfied may reasonably be permitted to operate." Hilbert v. Roth, supra, 395 Pa. at 275. See also Blanchard v. Wilt, 410 Pa. 356, 188 A. 2d 722 (1963); Frank v. Volkswagenwerk, 522 F. 2d 321, 326 (3d Cir. 1975).

Indeed, it has been stated that this presumption is *conclusive* in a situation like the present one where a contested trial has produced judgment and satisfaction thereof:

"It is not clear from Blanchard and Hilbert whether the 'one satisfaction' rule is now restricted to those cases in which the prior satisfaction followed an adversary action on the merits, and we need not so decide. What does seem clear is that the court in the second suit must be satisfied that the prior proceedings, however resolved, were of such a nature that the presumption of full satisfaction can operate. *Where the prior satisfaction was based on a judgment following an adversary action on the merits, the presumption of full satisfaction would appear to be conclusive.*" Frank v. Volkswagenwerk, 522 F. 2d at 326 (Emphasis supplied).

Plaintiff contends, however, that the strength of such a conclusive presumption is vitiated by his allegation that the injury claimed in the present action is different than that compensated in the prior action. He argues that the first recovery was for a permanent and *partial* disability which was caused directly by the motor vehicle accident, and that this second action seeks recovery for an alleged permanent and *total* disability caused by the extraordinarily negligent conduct of Dr. Wycis and the hospital.

Such contention notwithstanding, we find this bald allegation as to the degree of damage insufficient to defeat the operation of the presumption. Plaintiff presented his injuries at the first trial as an indivisible whole, including both the injuries from the auto accident and those further injuries now claimed as resulting from the medical treatment. Plaintiff cannot be permitted to speculate on the verdict entered in the action against the city in such a fashion as he proposes here. Even assuming any enervation of the presumption applicable under the present facts by plaintiff's allegations, its strength is fully restored by plaintiff's failure to have requested special findings, through special interrogatories to the jury, in the prior action.

Although research discloses no cases in Pennsylvania directly discussing the duty to request special findings and the effect of a failure so to do, other jurisdictions have imposed such a duty on the party petitioning the court to draw special inferences from a general verdict. By operation of the presumption of full satisfaction following an adversary trial on the merits, plaintiff is now essentially in just that posture.

In McMullen v. Corkum, 143 Me. 47, 54 A. 2d 753

(1947), a slander action, where the defendant asked for no special findings as to each count, any uncertainty in the general verdict in favor of plaintiff was resolved against the defendant.

In Codekas v. Dyna-Lift Co., 121 Cal. Rptr. 121, 48 Cal. App. 3d 20 (1975), a defendant repairer was held liable by a general jury verdict along with three other defendants in varying amounts. The jury was charged that all defendants could be held liable on both negligence and products liability. The repairer appealed on the basis that strict liability does not apply to repairers but only to manufacturers and sellers. The court acknowledged that since no special verdict was requested, there was no way to tell which legal basis the jury had used for imposing liability—the proper one or the improper one. The court ruled that the general verdict implied findings in favor of the prevailing party on all issues submitted to the jury. Therefore, it was presumed that the jury found liability on the proper, negligence theory which was supported by substantial evidence. The court observed that

". . . parties should have one chance to have a jury's fact finding pinpointed; this can be accomplished by requesting special verdicts or findings . . .; when a general verdict is returned under circumstances where a special verdict might have been used, the appellate courts must guess which of several possible alternate routes the jury traveled to reach its destination; . . . *the responsibility for requesting special verdict forms rests with the party who loses the verdict.*" Codekas, supra, 121 Cal. Rptr. at 124, 48 C.A. 3d 25 (Emphasis supplied).

In the case at bar, plaintiff, winner of a substan-

tial sum by general verdict, is in the peculiar position of claiming that he was the "loser" on the issue of "extraordinary negligence" in the prior action so that he may pursue a second recovery in the present suit. Under our practice, a general verdict is a determination of *all* the several issues in favor of the party for whom it is rendered; if there is a material difference in the issues, the party desiring separate findings on each issue should so request: 38 P.L.E. 388, §382; see also Com. v. Moore, 99 Pa. 570 (1882).

In one of the few Pennsylvania cases which our research has disclosed to touch on this subject, three theories had been presented to the jury to prove negligence on the part of defendant railroad in causing a fire which damaged plaintiff's property. The court on review held that two of these theories were supported by sufficient evidence to go to the jury but the third was not, and was therefore error. If the jury had predicated the general verdict brought in for plaintiff on that theory, the verdict would have had to be overturned upon proper exception. The court had ". . . no way of knowing, however, whether or not the jury predicated its verdict upon the [third] theory, as the jury returned a general verdict. Appellant never requested a special verdict, nor did it request that special interrogatories be given to the jury to determine what was the basis for their decision. . . ." Connelly Containers, Inc. v. Pa. R.R., 222 Pa Superior Ct. 7, 15, 292 A. 2d 528 (1972). The court held, therefore, that defendant's failure to request special findings was a substantial factor in its decision to allow the verdict to stand:

"In view of appellant's failure to request a special

verdict or interrogatories to the jurors, the apparent relative strength of the two other theories presented to the jury, and fact that appellee did not argue the [third] theory to the jury, we hold that the trial judge's charge was not the 'basic, fundamental and prejudicial error' which would require the reversal of the judgment below." Connelly, supra, 222 Pa. Superior Ct. 16. Cf. Weinstein v. Phila. Transp. Co., 222 Pa. Superior Ct. 448, 295 A. 2d 111 (1972).

What we derive from these Pennsylvania cases as well as cases in other jurisdictions is the rational conclusion that where a general verdict has been returned, where a special verdict might have been used but was not requested, the responsibility for requesting a special verdict lies with the party who now seeks to draw an otherwise indeterminable inference from the general verdict. Such inference will not be drawn in these circumstances, and the normal implication of a general verdict that all issues submitted were found in favor of the verdict winner will apply.

Although plaintiff won the general verdict in the prior action, he now wants the court to infer that he "lost" the narrow issue of extraordinary negligence which was litigated in the former trial. Such an inference cannot be drawn on the totality of this record, including the testimony, the charge by the court and the statements and argument to the jury by counsel. See Knutsen v. Brown, supra. The size of the satisfied verdict, $450,000, offers no implication that all of plaintiff's injuries have not been compensated. Nor does anything else in the record of the former trial compel such an inference. In the absence of any indication to the contrary, the operation of the presumption of full satisfaction,

bolstered by the rule we derive precluding inferences from a general verdict, mandates that plaintiff is barred from maintaining the present action.

## 3. JUDICIAL ESTOPPEL

Although we conclude that plaintiff's claims against the present defendants have been satisfied by the recovery in Rizzo v. City of Philadelphia, thus barring the instant action, a further basis for our decision is founded on an estoppel, different than the typical forms of "estoppel in pais" ("classical estoppel") or "collateral estoppel." In both of these doctrines there are prerequisites which are lacking herein. As to the estoppel in pais, defendants did not both believe and rely to their detriment on plaintiff's statements during trial that he would not and could not sue Dr. Wycis or the hospital. As to the latter doctrine, collateral estoppel, that applies only where the parties and issues in both cases are identical, which is not the present circumstance.

The estoppel rule which we here invoked, sometimes labeled "judicial estoppel," has been applied in Federal courts and finds support in Pennsylvania case law. This doctrine posits that a plaintiff who has obtained relief from an adversary by asserting and offering proof to support one position in adversary litigation on the merits may not later be heard to contradict himself in an effort to obtain relief in a later action, inconsistent with his earlier contention: See Scarano v. Central R. Co. of N.J., 203 F. 2d 510, 513 (3d Cir. 1953); Glick v. White Motor Co., 458 F. 2d 1287 (3d Cir. 1972). See also Wills v. Kane, 2 Grant 60, 63 (Pa. 1853), quoted with approval in Tops Apparel Mfg. Co. v. Rothman, 430 Pa. 583, 587-88, fn. 8, 244 A. 2d 687 (1968).

It should be noted that, as in our earlier discussion of judicial admissions, the statements made by plaintiff's attorney were made fully within the scope of his authority and are therefore deemed the same as though made by plaintiff himself: Jones v. Piper Aircraft, supra.

In the Scarano case, supra, where Judge Hastie first detailed the elements of this rule, the fact pattern is strongly analogous to that of the instant case. There, plaintiff was an employe of defendant railroad who was injured by falling from the top of a locomotive. He brought suit against defendant under F.E.L.A., alleging that he was "'totally incapacitated from [sic] resuming his former occupation or from engaging in any other form of labor.'" Each side produced medical testimony in support of its contrary positions as to the extent of injury. Thus, one of plaintiff's witnesses testified that plaintiff was "totally disabled" and that his "'condition will become progressively worse should he attempt' any work involving 'the normal range of use of the back that is usually required in any physical effort.'" The jury returned a verdict for plaintiff in the amount of $35,000 without any special interrogatories.

Plaintiff thereafter brought suit against defendant calling for reinstatement in his job pursuant to the collective bargaining agreement which provided for reinstatement after injury when the employe becomes physically able to perform the duties of his job. Defendant moved for summary judgment on the ground that "'the amount of [the] judgment [in the earlier action] was based upon plaintiff's claim, supported by his medical testimony, that he was totally and permanently disabled from doing railroad work and therefore bars

the right of plaintiff to any further compensation . . . either under the contract or otherwise.'"

Plaintiff asserted that the issue of whether or not he was totally and permanently disabled had not been judicially determined by the judgment entered in the earlier action since there was no way of knowing whether that jury decided that plaintiff was permanently disabled.

The trial court granted the motion for summary judgment, and Judge Hastie affirmed on the ground that plaintiff was estopped from contradicting himself by taking a position so flatly inconsistent with his earlier contention.

Almost 20 years later, Judge Rosen of the same court invoked Judge Hastie's rule of estoppel to prevent a party from disputing the authenticity, in a later trial, of certain exhibits which he had introduced in a prior trial. Judge Rosen there noted:

"Appellant White took the position at all relevant times that the exhibits were genuine. In his closing argument counsel for White expressly requested the jury to find the spring as manufactured by Rockwell, sold to White and mounted on the right front of the Glick truck was defective because of the tool or gouge marks impressed into the steel [as shown in the exhibit]." Glick v. White Motor Co., supra, 458 F. 2d at 1290. There was no question that counsel's statements in closing argument to the jury were binding on his client: Glick, supra, at 1291.

In the case at bar, plaintiff's attorney took the position that there was no negligence on the part of Dr. Wycis and that he could not sue him:

"As a result of communicating with Frank, as he

testified to you from the witness stand, I recommended that he file suit to protect himself and his family. I am not a doctor either.

"I want you to know something else, if I didn't do that, I would be guilty of legal malpractice.

"That is my job. If any of you have had a problem and asked me that, I would tell you the same thing. It has never been pursued. The first initiation of this is the filing of a complaint, that is all. It has never been pursued. *Why? Because there is no negligence,* as Doctor Polakoff and as Doctor Joyce have told us. It was to protect him in case there was. When a man wakes up paralyzed and you don't know and when the statute runs, it is too late. I want you to know that this is his only day in court. When a verdict is rendered by the jurors in this case, I can't come back. *I can't sue anyone else.* I can't sue the city again. That is it. This is what they have waited for for seven years." Exhibit A at 25-26. (Overruled objections by counsel for the City of Philadelphia omitted.) (Emphasis supplied.)

While these statements might be legal conclusions and hence not binding as admissions, they are nevertheless assertions of a position upon which plaintiff wanted the jury to rely so that they would compensate him for all the injuries flowing from the accident including Dr. Wycis's surgical treatment. Under the principle of estoppel articulated in Scarano, plaintiff is now estopped from contradicting that position by later suing the party whom he had assured the jury that he would not and could not sue.

This principle finds support in Pennsylvania cases as early as 1853: "When a man alleges a fact in a court of justice, for his advantage, he shall not be allowed to contradict it afterwards. It is against

good morals to permit such double dealing in the administration of justice." Wills v. Kane, supra, quoted with approval in Tops Apparel, supra. Such "double dealing" is as offensive to the administration of justice today as it was 125 years ago.

One further point should be noted. Judge Hastie, in Scarano, dealt with a situation where the second claim was against the same defendant as in the first, and therefore phrased his articulation of the rule in terms of the same adversary. That this was not considered by him to be a necessary element of his ruling is unequivocally demonstrated by a New York case which Judge Hastie then cited, Krause v. Krause, 282 N.Y. 355, 26 N.E. 2d 290 (1940). In Krause, a husband who had secured an out-of-state divorce from his first wife was estopped from contesting the validity of that divorce in an action by his second wife for support.

It must be emphasized that we are not here concerned with either collateral estoppel or estoppel in pais, which require identity of parties. Cf. Ham v. Gouge, 214 Pa. Superior Ct. 423, 257 A. 2d 650 (1969). In the instant application of estoppel principles, the thrust of the application of the doctrine is the reliance by the court and jury on the position taken by the party judicially estopped.

For the foregoing reasons, we enter the following

## ORDER

And now, January 23, 1978, upon consideration of defendant's motion for summary judgment and of the briefs and arguments thereon, it is hereby ordered and decreed that said motion is granted.