# Wallace *v.* Pennsylvania Railroad Company, Appellant.

*Negligence—Damages—Future pain and suffering.*

In an action to recover damages for personal injuries the jury may and should award compensation for future pain and suffering whenever the evidence furnishes just ground for the belief that such pain and suffering will likely or probably ensue.

*Negligence—Railroads—Surgical operation—Sequence of original injury—Damages—Radiograph pictures—Evidence.*

Where a surgeon employed by a railroad company sets the broken leg of a passenger in such a way as to cause the fibula to override, resulting in intense pain, and making necessary a second operation, if the second operation is performed in good faith, with a view to promote and insure complete recovery or mitigate the patient's pain, either by correcting what had been done, or by supplementing it, by a surgeon in whose skill and judgment the ordinarily prudent person would have a right to rely, the consequences following the operation and resulting directly therefrom, are in a legal sense the sequence and result of the original accident; and it is immaterial that the second operation did not relieve the patient's pain and suffering.

In such a case the surgeon who performed the second operation is properly permitted to show that his conclusion in determining that the second operation was necessary, was based upon radiograph pictures, and that when operating he found the conditions to be just as the picture represented. Under such circumstances the objection that the pictures were not taken by a professional, amounts to nothing.

Argued Oct. 13, 1908. Appeal, No. 180, Oct. T., 1908, by

defendant, from judgment of C. P. Lawrence Co., March T., 1906, No. 62, on verdict for plaintiff in case of Fred F. Wallace v. Pennsylvania Railroad Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

· Trespass to recover damages for personal injuries. Before WILLIAM E. PORTER, P. J. .

The facts are stated in the opinion of the Supreme Court. ·

At the trial when Doctor L. W. Swope was on the stand certain radiograph pictures were shown to him, and he was asked this question:

"Q. I will ask you, doctor, to take exhibit ' B ' to the jury. First, when this incision was made state whether or not the conditions that you found there corresponded with the radiograph? A. It did."

Mr. Jackson: I ask that answer to be withdrawn until I make my objection.

Mr. Aiken: We will consider it withdrawn. ·

Mr. Jackson: What is the question for?

Mr. Aiken: What do you say? I am not saying. It is your duty to give the purpose of the question.

Question read at suggestion of counsel.

Defendant's counsel object, as it contains two separate and distinct questions and different subject-matters.

We object to the witness going to the jury and showing the jury the radiograph plate, because it has not been properly identified or shown by an expert to have been made so as to make it evidence for any purpose. It is objected to for the second reason because a radiograph plate, sometimes called X-ray, of the wounded or injured parts of this man's leg, for which suit is brought, is incompetent and irrelevant evidence and should not be received for any purpose whatever as to anything in issue in this case and we desire the court to understand we make two distinct and specific objections to the offering of these radiographs to the jury, in that it has not been shown to have been taken in such a way or by such a person of such a profession, such an expert, as would entitle it to be

received as evidence. Further objected to for the reason that the radiograph and X-ray pictures of injured and deformed parts are not receivable in evidence on the trial of a case like this; that there is nothing at issue in this case except a question of damages for injuries sustained, for costs and expenses that may have been incurred, for such damages as might properly be allowed for pain and suffering and for loss of earning power since the accident up to the present and if it should be believed in the future.

No one of these questions is relevant in the offer of the picture, X-ray or radiograph, as it is termed, nor is it competent, and that its being offered is for an improper purpose and only for the purpose of inflaming the minds of the jury improperly.

The Court: The surgeon is called upon to go before the jury and to use the radiograph in explaining the condition of the injured leg as found by him and I believe it would be proper to allow him to do so, and we will permit the witness to do that. There is really no question before the court to rule on. You may proceed, doctor.

Mr. Jackson: The court being of opinion that there is no question before the court to raise the question objected to, I now object to the witness showing this plate to the jury because the plate has not been sufficiently identified and has not in fact been offered in evidence, and it is therefore incompetent for the witness to use it in illustrating, as there is no proof that it even pretends to be a picture of the plaintiff's injured limb.

The Court: We will overrule the objection and seal an exception for the defendant. [6]

Last question read witness.

"A. Yes, sir, it did."

The court charged in part as follows:

[In addition to compensation for expenses incurred and loss of earning power you may consider compensation for pain and suffering, and in doing so you are not confined simply to what he has endured since the accident to the present time, but what he will probably suffer in the future as a sequence of the injury.] [1]

Plaintiff presented these points:

7. In considering the damages you may award the plaintiff for pain and suffering you will consider the pain and suffering he has already endured bodily and mentally, and which he is likely to endure, and it is for you to determine what compensation under all the circumstances should be allowed the plaintiff, in addition to the other items of damage to which he is entitled, in consideration of the pain and suffering as a result of the accident and what amount of money is sufficient compensation for pain and suffering is to be decided by the jury. *Answer:* Affirmed. [2]

4. That if the jury find that the operation of Doctor Swope caused dead bone and that this dead bone was not the sequence or result of the original injury they should not take this dead bone into account in making up their verdict. *Answer:* Refused.

While it is true the plaintiff cannot recover for injuries which are not the sequence of the original injury received in the accident, yet if he exercised care, caution and good judgment in the selection of a skillful and competent surgeon he has discharged his duty in this respect and is not responsible for an error in judgment or unskillful treatment on the part of the surgeon who has been selected with care. Where a person has used reasonable care in selecting a physician or surgeon, but owing to unskillful treatment the injury has been increased, the party causing the injury will be held liable for the latter. [3]

Defendant presented this point:

That the defendant is not liable for damages arising from the fault, mistake or neglect of plaintiff's own surgeon, which produced injury and loss to plaintiff that could under no circumstances have resulted from the injuries plaintiff received at the collision. *Answer:* Affirmed.

In affirming this point while we say the defendant is not liable for an injury caused by the fault, mistake or neglect of the surgeon which could under no circumstances have resulted from the injury caused by the accident, yet if the plaintiff used reasonable care in selecting a physician or surgeon, but owing to unskillful treatment by the surgeon thus selected the injury

has been increased the defendant will be held liable for the increased injury if it is liable for the original injury. [4]

Verdict and judgment for plaintiff for $15,250. Defendant appealed.

*Errors assigned* were (1–4) above instructions, quoting them; (6) ruling on evidence, quoting the bill of exceptions; and (7) that the charge was inadequate.

*Oscar L. Jackson,* with him *C. B. Fernald* and *Charles R. Davis,* for appellant.—The liability for future damages for the wrongful infliction of a personal injury is strictly limited to compensation for such pain and other evil effects as are reasonably certain to result from it. Possible even probable future effects are too remote and speculative to form the basis of legal recovery: Chicago, M. & St. P. Ry. Co. v. Lindeman, 143 Fed. Repr. 946; Chicago, M. & St. P. Ry. Co. v. Newsome, 154 Fed. Repr. 665; Curtis v. R. R. Co., 18 N. Y. 534; Smith v. Milwaukee Builders' & Traders' Exchange, 91 Wis. 360 (64 N. W. Repr. 1041); Stutz v. Ry. Co., 73 Wis. 147 (40 N. W. Repr. 653); Fry, v. Ry. Co., 45 Iowa, 416; Aaron v. R. R. Co., 2 Daly, 127; Ross v. Kansas City, 48 Mo. App. 440; Chicago, R. I. & P. R. R. Co. v. McDowell, 92 N. W. Repr. 121; Ford v. City of Des Moines, 106 Iowa, 94 (75 N. W. Repr. 630).·

The X-ray pictures were improperly admitted in evidence.

*Robert K. Aiken,* for appellee.—The plaintiff is entitled to recover for the pain and suffering that plaintiff has endured and will endure in the future on account of his injuries: Smedley v. Ry. Co., 184 Pa. 620; Baker v. Irish, 172 Pa. 528; Penna. R. R. Co. v. Hope, 80 Pa. 373; Hoag v. R. R. Co., 85 Pa. 293; Filer v. N. Y. Cent. R. R. Co., 49 N. Y. 42.

X-ray photographs may be shown to the jury to illustrate or make clear the testimony of experts: Hampton v. Norfolk & W. R. R. Co., 35 L. R. A. 808; Geneva v. Burnett, 58 L. R. A. 287.

OPINION BY MR. JUSTICE STEWART, January 4, 1909:

The evidence fully warrants the conclusion reached by the

jury in this case that the injuries sustained by the plaintiff were severe to an unusual degree. Whether they all were legally chargeable to defendant's negligence is a matter to be considered later on. Under the instructions of the court the jury were allowed, in determining the plaintiff's damages, to take into consideration the pain and suffering he would probably in the future endure, as a sequence of his injuries, as well as that he had already suffered. This instruction is complained of as introducing an element of damage too remote and speculative to form a basis of legal recovery, and it is the subject of the first assignment of error. Nothing is better settled than that in cases of personal injury pain and suffering are to be reckoned as distinct elements for which compensation is to be allowed. It is equally well settled that this rule admits of compensation for future as well as past pain and suffering. With what degree of certainty must it be made to appear that the future pain and suffering will ensue before compensation for them can be allowed? That is the question raised by the assignment; and it might well call for consideration if no rule existed with respect to it, or the rule were of questionable authority. But neither is the case. In the multitude of cases of like character which have come before this court for review, one unvarying rule has been observed regarding the quantum of proof required, and it is this—the jury may and should award compensation for future pain and suffering whenever the evidence furnishes just ground for the belief that such pain and suffering will likely or probably ensue. This standard has met with the approval and sanction of this court in every case, and that without qualification. It is sufficient to refer to the cases of Schneider v. Penna. Co., 2 Cent. Repr. 74; McLaughlin v. City of Corry, 77 Pa. 109; Scott Township v. Montgomery, 95 Pa. 444; Lake Shore, etc., Railway Co. v. Frantz, 127 Pa. 297; Smedley v. Railway Co., 184 Pa. 620. Many others as distinctly recognizing and enforcing the rule could be cited were it necessary. In the case of Scott Township v. Montgomery, 95 Pa. 444, an instruction to the effect that the "jury shall allow for pain and suffering, the plaintiff had already endured, bodily and mentally, and which he is likely to ex-

perience" was assigned for error. This court held in a per curiam that the measure of damages was correctly stated. In Lake Shore, etc., Ry. Co. v. Frantz, 127 Pa. 297, the trial judge in his charge had allowed the jury to consider the pain and suffering "the plaintiff has undergone and may undergo in the future." This was specifically assigned as error. This court, while disapproving of the expression "may undergo," affirmed the judgment on the ground that in the connection in which it was used it could not have been misleading to the jury, in view of the subsequent instruction that recovery was to be limited to "that already experienced and likely yet to be experienced." With such explicit and repeated recognition by our own courts of a rule which admits compensation for pain and suffering likely to ensue, it comes to nothing to show that in some jurisdictions recovery for these is allowed only when it is made to appear that they are reasonably certain to result. We are not called upon to vindicate the justice or reasonableness of the rule which obtains with us; it is only necessary to assert it and express our continued adherence to it. All that is required with us is, that there be sufficient evidence from which the jury may fairly derive the conclusion that the chances that the plaintiff will endure future pain and suffering preponderate over those that he will not. Such preponderance denotes probability or likelihood, and that is sufficient.

The plaintiff, while a passenger, was injured in a collision between two of defendant's trains, sustaining a fracture of both bones of his left limb between the knee and ankle. This occurred September 7, 1905. He was at once removed to a city hospital where he was placed in charge of a physician and surgeon in the employ of the defendant company, who proceeded without delay to place the injured limb in alignment and apply splints. The plaintiff remained in the hospital under treatment for nearly a month when, being able to go about on crutches, he was taken to his home. About the middle of November following, the same surgeon removed the plaster cast and directed moderate use of the limb. Plaintiff testified that after the removal of the cast he suffered pain in his limb so severe that he was scarcely able to endure it. It is not al-

leged that this pain resulted from any undue or immoderate use of the limb. Because of its continued severity plaintiff procured radiographs to be taken of the injured part, and in view of what these were supposed to disclose, he employed Doctor Swope, a surgeon of repute residing and practicing in the city of Pittsburg. From an examination of the radiographs and the patient, Doctor Swope concluded that what caused the pain was an overriding of the fibula to the extent of three-fourths of an inch, and that an operation was necessary to make the small bones unite squarely, and thus relieve the pressure upon the vessels and nerves of the foot resulting from the overriding. The operation involved not only an incision, but a severance of the bones which had partially united, the removal of the oblique ends, and the bringing them into a more perfect apposition and securing them in proper place by artificial tendons. This operation was performed by Doctor Swope with the assistance of another surgeon, and in the presence of several, at the same hospital where the patient was first treated. Doctor Swope testified that he found the conditions to be just as the radiographs represented them, and in addition he found the tissues about the place of fracture devitalized, the blood supply having been interfered with by the pressure of the bone. Several months later another operation was required for the removal of a piece of dead bone which resulted from the devitalized tissues. At that time it was observed that the tissues were doing no good, not healing, not throwing off the broken-down processes. Doctor Swope gave it as his conclusion from a very recent examination of the patient, that there had been but little improvement in his condition; that necrosis was still going on, and that another operation would be required for the removal of dead bone. The effort on part of the defendant was to show that the operation performed by Doctor Swope was wholly unnecessary; that plaintiff's limb was in good condition at the time the operation was performed, and that the healing processes were steadily going forward; that if there was any overriding of the bone it was so slight as to be of no consequence, nothing beyond what is ordinarily looked for in such cases, and the necrosis which

subsequently set in, and is the admitted cause of plaintiff's present disability and suffering, is due wholly to the operation performed by Doctor Swope. This view of the case was expressed by Doctor Wilson, the surgeon who first treated the plaintiff, and he was fully supported in it by several others called by the defendant. Into this controversy we need not enter. Every point submitted by the defendant which bore relation to it was affirmed by the court with a single exception. Defendant's fourth point was as follows: "If the jury find that the operation of Doctor Swope caused the dead bone, and that this dead bone was not a sequence or result of the original injury, they should not take this dead bone into account in making up their verdict." In refusing this point the learned trial judge said: "While it is true the plaintiff cannot recover for injuries which were not the sequence of the original injury received in the accident, yet if he exercised care, caution and good judgment in the selection of a skillful and competent surgeon, he has discharged his duty in this respect, and is not responsible for an error in judgment or unskillful treatment on the part of the surgeon who has been selected with care. Where a person has used reasonable care in selecting a physician or surgeon, but owing to the unskillful treatment the injury has been increased, the party causing the injury will be held liable for the latter." Putting it somewhat differently, the point was refused because it did not comprehend sufficient matters of fact to justify the conclusion sought to be drawn; and this was clearly right. If the operation was performed in good faith, before the recovery of the plaintiff from the original injury, with a view to promote and insure complete recovery or mitigate plaintiff's pain, either by correcting what had been done or by supplementing it, by the surgeon in whose skill and judgment the ordinarily prudent person would have a right to rely, the consequences following the operation and resulting directly therefrom are in a legal sense the sequence and result of the original accident. The affirmance of the point would have involved an assumption that there was no evidence from which the jury could find such conditions as those we have indicated, and which, once established, would legally refer the

consequence to the accident as the proximate cause. Instead of this being the state of the evidence, there was not only abundant testimony in support of every contention we have above referred to, but there was no attempt whatever on the part of the defendant to controvert it. This testimony, if accredited, established not only a connection between the pain and suffering caused by the presence of the dead bone and the original accident, sufficient in law to make the accident the proximate cause, but it linked the two together in such a way as to make a natural whole. Any consideration of this matter must start with the fact that before the fractured parts had healed, while the process was going on, and after plaintiff had been virtually released from the surgeon's care and supervision, he was subjected to intense pain and suffering in the region of the fracture. If such were not the fact, or if it resulted from something else than the original injury, defendant should have made some effort to controvert the testimony with respect to it. It is enough in this connection to know that the testimony was undisputed. The natural connection between the pain, if it existed, and the original accident, is too obvious to call for remark. It was just as natural that the plaintiff, in his desire to be released from the pain to which he was subjected, should have recourse to surgical skill and submit to whatever treatment such skill should determine upon. The suffering which followed the treatment, whether that treatment was wise or unwise, is as directly and naturally traceable to the original accident as that which attended the setting of the fractured limb in the first place; both were parts of the connected whole, and of course it is of no consequence that one is further from the beginning of the chain of events than the other. What we have here said applies as well to the fourth assignment, which is the answer of the court to the defendant's fifth point, which asked the court to say, "that defendant is not liable for damages arising from the fault, mistake or negligence of plaintiff's surgeon which produced injury and loss to plaintiff that could under no circumstances have resulted from the injury plaintiff received in the collision." The court affirmed the point, and followed the affirmance with a quali-

fication or explanation which set out the same considerations which led to a refusal of the fourth point. It is the qualification that is assigned for error. Like the point itself it assumes a case where the injury under no circumstances could have resulted from the original accident, and acquits from liability the party causing the accident. It goes on to say, however, that though injury was caused by unskillful treatment, yet, if the plaintiff exercised ordinary care in the selection of the surgeon, the defendant, if liable legally for the original injury, would be liable for the increased injury as well. The point submitted should have been refused for reasons which we have stated in considering the former point; the explanation left the affirmance without advantage to the defendant, but so far as it went it was a correct statement of the law under the facts of the case.

It was entirely proper to allow the witness, Doctor Swope, to state the grounds on which he based his conclusion as to what caused the pain from which the plaintiff suffered, and prevailed with him in determining that an operation was necessary. His conclusions were based largely upon what the radiographs revealed. This circumstance made the radiographs admissible. While, as we have stated, it was not a material inquiry in the case whether the operation was a prejudicial one or not, if made in good faith by one on whose skill the plaintiff had a right to rely, yet it was around this question that the controversy was waged, the defendant insisting that no excuse whatever existed for the operation. Under such circumstances it would have been most unjust to the witness to refuse him permission to show by the radiograph what directed his judgment. He testified that when operating he found the conditions to be just as the pictures represented. In view of this testimony the objection that they were not taken by a professional comes to nothing. The sixth assignment of error for the reasons given cannot be sustained. The remaining assignment complains of the inadequacy of the charge in that it does not sufficiently call the attention of the jury to the evidence on the part of the defendant as to plaintiff's ability to make use of the injured limb,—this in connection with the question of

compensation. This assignment is without merit. The charge is not only a full and adequate presentation of the evidence, but strictly impartial.

The judgment is affirmed.