## Gallman v. Palm

*M. Bernard Hoffman*, for plaintiff.

*George R. Eves* and *Ralph C. Body*, for defendant.

SHANAMAN, J., January 3, 1949.—The jury awarded plaintiff $6,000 damages in a suit in trespass brought by her against defendant to recover damages for personal injuries suffered by her in an automobile collision. Plaintiff was a passenger and guest in the car driven

by defendant at the time of the collision. Defendant's car was proceeding toward Reading on the west bound traffic section of Route 22. Route 22 consists of two lanes for traffic toward Reading (west bound traffic) and two lanes for traffic away from Reading toward Philadelphia (east bound traffic). The west bound and east bound sections are separated at the point of collision by an island about 20 feet wide. The road was icy and slushy, the date January 6, 1947, the time about 12:30 a.m. While defendant's car was ascending the Baumstown Hill, Frank Bearden, driving a car on the east bound section lost control of his car, which left the east bound section, skidded across the island, and ran onto the westbound section where it was struck by defendant's car.

Defendant has taken a rule for new trial. Defendant contends that the court erred in admitting the X-ray into evidence, because the person who took the X-ray photographs was not called as a witness to verify them. Dr. Scornavacchi testified that he was called to St. Joseph's Hospital about 1:30 or 2 a.m. on January 6, 1947; that he responded to the call and saw and treated plaintiff at the hospital; that he had X-rays taken which showed a fracture of the skull and one fracture on each side of the jaw; that he had the X-rays with him in court; that he had the hospital chart; that the X-rays are submitted to him as the attending physician, by being "submitted" to the chart in the hospital record, and addressed to him; that the X-rays were made by the X-ray department at St. Joseph's Hospital; that he did not know who made them, but presumes that Dr. Werley made them; that he and Dr. Werley had consulted on the X-rays which Dr. Werley interpreted to the witness and that the witness and Dr. Werley agreed. Dr. Werley was not called as a witness by either plaintiff or defendant, and no objection was taken to the witness's testimony as to what the X-rays showed, nor

was any motion made to strike out the testimony. Defendant adduced no medical testimony.

The question before us is simply whether the X-rays were sufficiently identified to become admissible. We are of opinion that the identification was sufficient. They are a part of the hospital record accompanying the hospital chart. They were submitted to the attending physician, who brought them with him into court, and without objection testified concerning them. They were discussed by him, the witness, and Dr. Werley.

The next witness called by plaintiff after Dr. Scornavacchi, was Dr. Guy L. Haman, who did the oral surgery on plaintiff, and he testified that he was present when the X-rays were taken on January 6th at St. Joseph's Hospital, and that he had assisted Dr. Werley in taking them, with the patient in the X-ray department on the table. The evidence, if believed, establishes, therefore, that the exhibits in question were made by Dr. Werley and submitted to Dr. Scornavacchi, discussed by Dr. Werley with Dr. Scornavacchi, and brought by Dr. Scornavacchi into court. This sufficiently establishes that the X-rays admitted at the trial were the very X-rays taken of plaintiff.

In Wallace v. Pennsylvania Railroad Co., 222 Pa. 556, 566, radiographs on which the surgeon-witness based his conclusions were held admissible. "It is interesting to note that while certain requirements are theoretically necessary to authenticate an X-ray picture, few decisions have indicated that a complete verification is compulsory." Scott on Photographic Evidence (1942) p. 730. We add that the existence of the fractures was testified to by Drs. Scornavacchi, Haman and Manuszak, whose testimony to that effect was not rebutted.

Defendant next objects to the admission of a chart offered during the examination of Philip F. Chulick, a

State policeman. Chulick, being called by the defense, testified to conditions found by him after he visited the scene, and was then asked by defense counsel whether he could tell the distance required to stop a car under certain conditions, and replied that, with the aid of his chart, he could. At defense counsel's request, he produced it and defense counsel asked plaintiff's counsel if he objected to its admission. Plaintiff's counsel replied that he did not object, if the witness could answer the question with reference to a car going up hill. The witness said he could not so answer. On cross-examination, plaintiff's counsel again questioned witness about the chart and asked what was the distance for stopping on ice at 30 miles an hour. Defendant demanded an offer of the chart and objected to its admission. The court overruled the objection. The officer, however, actually did not answer the question, and the only point now to be considered is whether the chart was admissible. The chart or map is prepared by the Commonwealth of Pennsylvania, Bureau of Highway Safety, was in the possession of defendant's witness, and was brought into court and into the trial on the side of defendant. Defendant does not question its authenticity, but not having offered it himself, objects to it on the ground of immateriality and irrelevance, since it contained no tables of·distances for stopping a car by use of brakes on a hill grade. Where one of plaintiff's contentions is that defendant, under described circumstances, could have avoided the collision or lessened the force of the impact by putting on his brakes, and that he did not, an official table of distances within which one can stop by means of brakes on level ground, both icy and not icy, unchallenged as to authenticity, may, in our opinion, be exhibited to the jury, even though the accident occurs on a hillside, where it is admitted or is shown that defendant's car was climbing the hill. Such tables furnish a basis of knowledge to jurors

upon a subject on which many persons have far from correct notions. The testimony emphasized that the tables were only applicable to level driving, and the jury could readily draw the simple inference that defendant actually needed a less distance when aided by the pull of gravity. We point out also that the court offered to stop the examination upon the exhibit, as not proper cross-examination, in which case counsel for defendant could have had the admission stricken and could have renewed his objection to the admission as well as the testimony, if plaintiff attempted to call defendant's witness in rebuttal. Counsel preferred to have the record stand.

Defendant further objects to a remark of opposing counsel to defendant's counsel during the trial. This objection cannot be sustained since the remark was not made the subject of objection, exception or motion to continue, and was not placed upon the record by defendant's counsel: Ickes v. Ickes, 237 Pa. 582, 590.

Defendant further contends that the verdict is against the evidence and the law. Plaintiff testified that Bearden's car traveled about 300 feet across its highway, the island and defendant's highway to the point of collision; that when defendant was 400 feet from the point of the accident, plaintiff warned the defendant and that defendant did nothing to stop the car while defendant was traveling from 38 to 40 miles an hour; that plaintiff cried, "Stop", and that shortly before the collision defendant threw up his hands and the two cars collided. On the evidence, the case was for the jury. If the jury believed defendant's testimony that he thought Bearden was making a left turn on the road which crosses the island at the head of the hill, they were not bound to regard his belief as the exercise of reasonable care and skill, particularly in view of his testimony that he was familiar with the road and of plaintiff's testimony that defendant, when first warned

by her, make a remark indicative that he recognized that the Bearden car might be in trouble.

Defendant finally contends that the verdict is excessive. Plaintiff's bills were $1,359.67. Her skull and jaw were fractured, her teeth injured, and for six months her teeth, as a part of the medical treatment, were pulled together with multiple wires, during which time she could take nourishment through the mouth only in liquid form by sucking it through the teeth. Her bite is somewhat impaired in strength, and the distance to which she can open her mouth is substantially lessened. These conditions, while not of extreme severity, are permanent. We cannot say as a matter of law that the verdict for $6,000 was excessive.

And now, to wit, January 3, 1949, defendant's rule for new trial is discharged.