Gale GREENBERG

v.

Donald Lee McCABE, D. O.

Civ. A. No. 76–342.

United States District Court,
E. D. Pennsylvania.

June 16, 1978.

James E. Beasley, Philadelphia, Pa., for plaintiff.

Edward B. Joseph, Philadelphia, Pa., Jonathan D. Dunn, Pennsburg, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

Plaintiff in this psychiatric malpractice case alleges that defendant negligently treated her, principally by engaging in a sexual relationship with her in the course of therapy and by improperly administering drugs, from June 1968 through February 1974 and that she sustained permanent psychiatric damages as a result of this negligence. The jury returned a verdict for the plaintiff in the amount of $665,000: $275,000 for compensatory damages exclusive of costs for future psychiatric care, $90,000 for future psychiatric care and $300,000 for punitive damages. We will address at some length two of the points raised by defendant in his motion for judgment notwithstanding the verdict or for a new trial: that

plaintiff's claim is barred as a matter of law by the Pennsylvania statute of limitations and that the record does not support the award for future psychiatric treatment.

## I. STATUTE OF LIMITATIONS:

Plaintiff filed this suit on January 5, 1976, and there is no dispute that Pennsylvania's two-year statute of limitations for personal injuries applies. Defendant contends that as a matter of law the statute began to run before January 5, 1974, that the statute was not tolled and that plaintiff's claim is therefore barred. Defendant's position admixes two separate arguments, that our instructions to the jury were based on an erroneous interpretation of Pennsylvania law and that the jury, if properly instructed, could not reasonably have found that the statute of limitations did not bar the claim. We will consider these contentions separately.

### A. What Plaintiff "Should Have Known".

■ The Pennsylvania statute provides that personal injury suits must be brought "within two years from the time when the injury was done and not afterwards." 12 Pa.Stat.Ann. § 34. While the general rule in Pennsylvania is that the statute begins to run when the final event creating the cause of action occurs, Pennsylvania law recognizes exceptions to that doctrine in several factual situations; in malpractice cases the running of the statute depends on the plaintiff's discovery of his or her injury and its cause. The defendant contended at trial and argues in this motion that knowledge of the injury alone is sufficient to commence the statutory period. We determined that under Pennsylvania law malpractice suits must be filed within two years after the plaintiff knew or in the exercise of reasonable diligence should have known that the defendant's conduct was causing her harm, and we instructed the jury accordingly. The issue of what a plaintiff must discover actually or constructively has not been resolved by the Pennsylvania Supreme Court. That court's leading case on the statute of limitations, *Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959), is ambiguous as to whether knowledge of the cause of harm is required. The Third Circuit has answered this question for us, however, in *Bayless v. Philadelphia National League Club,* 579 F.2d 37 (3d Cir. 1978), where it held on the basis of the "common sense and reason" rationale in the *Ayers* analysis that "the rule in Pennsylvania is that the limitations period begins to run from the time that the plaintiff knows or reasonably should know the cause of his injury." 579 F.2d at p. 39.

### B. Jury's Consideration of Plaintiff's Drugged Condition in Ascertaining Time of Reasonable Discovery.

We charged the jury that if it found the plaintiff "was wrongfully under the influence of drugs" it should consider "what a person in her condition would be expected to do and to know" in ascertaining when the statute of limitations began to run and whether the plaintiff was contributorily negligent. N.T. 7–31. Furthermore, the interrogatory to the jury on the issue of the statute of limitations read, "Do you find that a person in Mrs. Greenberg's mental and physical condition (as you find it to have been) knew or should have known before January 5, 1974, that she was suffering harm as a result of defendant's conduct?" Defendant contends that the instruction and the interrogatory were in error in that they allowed the jury to consider the drug-induced impairments to the plaintiff's reasoning processes in determining when she should have known of her injury and defendant's causal relationship to it. Defendant's argument that the instruction was in error mistakenly relies upon two related lines of authority and misses the narrow point of law upon which the instruction and interrogatory were based.

■ First, defendant contends quite correctly that the statute of limitations cannot be tolled by the plaintiff's diminished mental capacities. *Walker v. Mummert,* 394 Pa. 146, 146 A.2d 289 (1958). Certainly, to the extent that a drug-induced impairment or

incapacity constitutes a mental condition, it does not as a general matter toll the statute. *Bayless v. Philadelphia National League Club,* C.A. No. 76–3221 (E.D.Pa. June 21, 1977), *rev'd on other grounds,* 579 F.2d 37 (3d Cir. 1978). Defendant's argument misses the point, however, in that it confuses the extraordinary equitable provision of tolling with the scope of circumstances which may be considered in the usual inquiry into when the plaintiff discovered or should have discovered her injury and its cause. Tolling stops the statute from running, even if it has started, on the basis of a single factual finding, and under Pennsylvania law mental incapacity is not a factual basis sufficient for tolling the statute. Our charge to the jury, on the other hand, was based on the reasoning that the plaintiff's mental condition, regardless of whether it amounted to incapacity, is among the many factors which can be weighed by the fact-finder in determining the time of discovery, insofar as that condition was caused by the defendant.

■ The defendant contends further that permitting the jury to consider the plaintiff's drugged state is improper in that she was bound as a matter of law to employ "objective reasonable diligence" in discovery of her injury and cause. Defendant's Brief at 26. We conclude to the contrary that under Pennsylvania law she should not be held to the standard of one whose mental capacities were not reduced by the defendant's conduct. The language employed by the Pennsylvania courts in describing the duty of a plaintiff to discover "by the exercise of reasonable diligence," *Ayers v. Morgan,* 397 Pa. at 292, 154 A.2d at 793, suggests that the relevant standard is that of the reasonable man as it recurs

throughout tort law. The general rule is that in determining the reasonableness of a person's conduct, his or her illness or physical disability can be considered in defining the standard which he or she must meet, but that a mental deficiency cannot be taken into account. *Restatement (Second) of Torts* §§ 283B, 283C (1965). *Accord,* W. Prosser, *The Law of Torts* § 32, at 151–54 (1971). It would have been error, consequently, to instruct the jury that they could consider Mrs. Greenberg's level of intelligence or other mental characteristics generally in determining when she should have arrived at discovery in the exercise of reasonable diligence.

That was, however, neither the legal theory nor the practical effect of the challenged instruction and interrogatory. Rather, they were aimed at permitting the jury to take into account mental disabilities caused by the drugs which were prescribed and/or administered to the plaintiff by the defendant as part of the therapy which plaintiff proved was negligent. There was no evidence presented that plaintiff's judgment and capabilities were impaired by drug-taking in which the defendant was not involved. Even the interrogatory to the jury, bringing into play the plaintiff's "mental . . . condition", could have referred in this record only to mental disabilities incurred by the plaintiff as a result of the defendant's treatment. We observed in formulating the charge, "There is nothing in the record to show that her judgment was impaired by anything other than this," and the defendant acquiesced in that assessment. N.T. 6–63.

While we know of no Pennsylvania authority directly on point,[1] logic compels the

---

1. Defendant cites the district court opinion in *Bayless v. Philadelphia National League Club* for the proposition that his contribution to the plaintiff's drugged condition does not warrant its consideration by the jury in determining the time of reasonable discovery. The facts of *Bayless,* in which a baseball player alleged that he was injured by, *inter alia,* improper administration of drugs by his employer team, are essentially on point. The argument advanced by the plaintiff and rejected by the court there, however, was that his incapacity caused by the

drugs should *toll* the running of the statutory period. As we have noted, our case involves not tolling by reason of incapacity, but rather mental condition as a factor to be determined in discovery. To the extent that the granting of defendant's motion for summary judgment on the ground that the statute had run in *Bayless* is inconsistent with allowing a drugged state induced by defendant to be a factor in discovery, we respectfully disagree with that opinion.

conclusion that it was proper for the jury to consider the plaintiff's mental disabilities insofar as they were caused by the defendant. Our determination is based in part on our understanding of the rationale for the discovery rule in *Ayers v. Morgan.* The Supreme Court reasoned that *Ayers'* claim could not be barred because the defendant's conduct set in motion objective "laws of nature" which prevented Mr. Ayers from ascertaining the cause of his abdominal pain: since defendant had sewn him up as part of the treatment, "he could not open his abdomen like a door and look in" to discover the cause of his pain. 397 Pa. at 289, 154 A.2d at 792. Similarly, in this case the testimony of the psychiatrist called by plaintiff as an expert established that as a matter of scientific fact the defendant's therapy impaired the judgment and mental processes of Mrs. Greenberg in a way that was analogous to, if subtler than, the surgeon's sewing up ·of Mr. Ayers' abdomen. Thus, the plaintiff presented competent and unrebutted testimony that as a result of the operation of the "laws of nature" in connection with Dr. McCabe's treatment, which laws we understand to comprise the psychiatric as well as the physiological, she was precluded from discovery. At issue is the objective effect of the defendant's treatment on discoverability by a reasonable person, not the impact on discoverability of the plaintiff's mental deficiencies apart from that treatment.[2] On this basis, we conclude that the instruction and interrogatory accurately reflected Pennsylvania law.

■ We wish to emphasize the narrowness of the doctrine by which a plaintiff's mental condition may be considered by the fact-finder in determining when he or she reasonably should have known of an injury and cause thereof. It does not mean that a plaintiff may offer slow-wittedness, idiosyncratic weaknesses of reasoning or lack of legal sophistication to excuse a failure to discover. Thus we do not mean to suggest that a defendant can be deprived of the important protections provided by the statutes of limitations, *see Schmucker v. Naugle,* 426 Pa. 203, 205–06, 231 A.2d 121, 123 (1967), *quoting United States v. Oregon Lumber Co.,* 260 U.S. 290, 299–300, 43 S.Ct. 100, 67 L.Ed.· 261 (1922), because he or she has the misfortune to harm a plaintiff who is not mentally capable of bringing the action within the statutory period. Rather, we mean to say that the statutory period does not begin to run if the fact-finder concludes that the plaintiff's failure of discovery, objectively determined, is brought about by the very nature of the defendant's conduct.

Our holding might be conceptualized in other ways. Defendant might be deemed to be estopped from being advantaged by considering the running of the statute on the basis of a state of objective reasonableness when his actions have precluded the plaintiff from attaining that state. Alternatively, the mental conditions of which plaintiff was not possessed at the time of the allegedly negligent conduct and which resulted from that conduct might be considered part of the external "circumstances" under which the reasonableness of a plaintiff's diligence in ascertaining discovery, like the reasonableness of an actor's conduct which is alleged to be negligent, must be assessed. *See Mogren v. Gadonas,* 358 Pa. 507, 510, 58 A.2d 150, 152 (1948); *Restatement (Second) of Torts* § 283 (1965). The conceptual approach reflected in our instructions to the jury was no more correct, but we think it was preferable under these facts in the relative clarity and freedom from legal theory and jargon of those instructions.

### C.  Date of Plaintiff's Constructive Discovery.

■ We must now apply this legal standard to the record in the case. Defend-

---

**2.** Since there was no evidence at trial of any significant mental deficiencies of the plaintiff other than those produced by Dr. McCabe's therapy, any "influence of drugs" or "mental condition" which may have affected the plaintiff was coterminous with the "laws of nature" arising from the treatment that may have impeded her judgment.

ant contends that, based on that record, the statute of limitations began as a matter of law to run either in 1968, when the therapy began, or in 1972, when the plaintiff was hospitalized for psychiatric treatment. The dispositive issue is whether we should have directed a verdict for defendant at the end of the trial on the ground that the defendant had presented facts establishing that the statute of limitations had begun to run by January 5, 1974, and that plaintiff had not presented enough evidence to demonstrate the contrary to take the case to the jury. Only if such a directed verdict would have been proper can we grant the motion for judgment notwithstanding the verdict. *Neville Chemical Co. v. Union Carbide Corp.,* 422 F.2d 1205, 1210 (3d Cir.), *cert. denied,* 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970). We must determine whether, reviewing the record and giving the plaintiff the benefit of all reasonable inferences, we find a sufficient basis for the jury's conclusion that the plaintiff neither knew nor should have known that she had been injured by the defendant as of January 5, 1974. We conclude that plaintiff did present sufficient facts to provide such a basis.

▪ Plaintiff presented proof that she has suffered permanent psychosis and minimal to moderate organic brain damage as a result of defendant's negligent treatment. N.T. 5–97, 5–98, 5–67, 5–68. We conclude that as a matter of law plaintiff knew at some time before January 5, 1974, that she was suffering from mental illness of some sort. Under the facts of this case, however, this conclusion does not amount to a reliable indicium of plaintiff's discovery. Since she had some mild neurosis when she first went to the defendant, knowledge of that mental disability certainly would not amount to discovery that would begin the statutory period. Under these circumstances, there is no reason to engage in separate inquiries as to when plaintiff learned of her condition and when she learned that de-

fendant's conduct caused it. The dispositive issue is whether plaintiff as a matter of law knew or should have known on or before January 5, 1974, of deterioration in her mental condition that was caused by the defendant's conduct, in light of all the circumstances (including the mental state she was in as a result of Dr. McCabe's conduct).[3]

The plaintiff sought treatment from the defendant in June 1968, when she was suffering from asthma as a result of the mild neurotic condition known as the "harried-housewife syndrome." N.T. 5–75. Dr. McCabe told the plaintiff during that visit that she had a lot of sexual hangups, and he prescribed therapy twice a week. Within six months of the beginning of therapy, the defendant had a sexual encounter with the plaintiff on the therapy couch, and a continuing sexual relationship as well as therapy transpired between them. The defendant contends that because the plaintiff testified that he told her in 1968 that it was wrong for them to have a sexual relationship, N.T. 4–90, the plaintiff had constructive notice as of that date of the defendant's improper treatment.

For several reasons we are unable to hold as a matter of law that the plaintiff knew or should have known in 1968 the elements requisite to starting the statutory period. First, the jury might well have concluded that the defendant's statement that the sexual relationship was wrong reflected his feeling that sex between him and the plaintiff was improper or immoral, rather than his opinion that it was improper psychiatric care, and that it was reasonable for plaintiff not to infer that the treatment was damaging her. Second, while the defendant told the plaintiff that a sexual relationship was "wrong", he also told her that that relationship would aid in her therapy. N.T. 4–91. The latter assurance is totally inconsistent with notice by the defendant of bad therapy, but is compatible with his relating a negative moral judgment.

**3.** Defendant contends correctly that the actual or constructive discovery which begins the statutory period need not be of the full extent of her injury by the defendant. *Ayers v. Mor-*

*gan,* 397 Pa. at 290, 154 A.2d 788. Knowledge of any mental harm caused by defendant would be sufficient.

These assurances could have been considered by the jury in determining the plaintiff's state of actual or constructive knowledge in 1968 and would support a conclusion that the defendant's statement that sex was wrong did not put the plaintiff in a position where she knew or should have known of her condition and his relation to it. Finally, the jury reasonably could have concluded that, even though the plaintiff knew at some time before 1974 that she was suffering from mental illness and that the defendant's treatment of her was medically improper, she had no reason to know of the causal connection between that malpractice and her condition. The defendant told her when they first met, before he began the therapy, that she was "very, very ill", N.T. 4–7, and she had insufficient notice in 1968 that any psychological problems she had were the result of the defendant's treatment for us to hold as a matter of law that she should have known of that causal relationship.

Defendant contends alternatively that, if the statute did not begin to run in 1968, it commenced as a matter of law in March 1972, when the plaintiff was admitted to the Harrisburg Polyclinic Hospital for psychiatric treatment and drug detoxification. Again, it is clear that plaintiff was aware at this time that she was suffering from mental illness. We are again unable to say as a matter of law, however, that the plaintiff knew or should have known that her psychiatric problems had been caused by any act of the defendant. The argument that the statute began to run in 1972 appears to be based on the severity of the plaintiff's mental problems when she was hospitalized in March. See Defendant's Brief at 16.

The factors which defendant argues should have linked those injuries with the defendant's conduct in plaintiff's mind are the plaintiff's treatment by two other psychiatrists in 1972 and afterwards, and her information from them that her sexual relationship with Dr. McCabe was wrong. But the defendant did not demonstrate that either of these doctors advised the plaintiff that the defendant's therapy was psychiat-

rically improper or had damaged her, N.T. 4–93, 4–96, 4–98, and in fact the doctor who treated her at Harrisburg Polyclinic Hospital testified that had the plaintiff asked him directly for his opinion as to her relationship and therapy with Dr. McCabe he would have "hedged on" the answer and would not have told her outright that it was damaging her. N.T. 2–103. Furthermore, the plaintiff testified that she considered the defendant her therapist and that she "didn't listen to anybody" but him. N.T. 4–94.

The defendant also points toward the plaintiff's consultation from 1970 to 1972 with an attorney relative to her obtaining a divorce and to her successful completion of a licensed practical nurse training program in 1973 as indicia of her actual or constructive knowledge of defendant's malpractice. While either of these events might support an inference that the plaintiff knew or should have known of her injuries caused by Dr. McCabe's therapy, they do not compel the conclusion that she was as a matter of law on notice of these facts.

In arriving at the conclusion both at trial and now that an issue of fact existed as to plaintiff's constructive knowledge as of January 5, 1974, we have considered an extensive and convoluted array of evidence which does not lend itself to ready summary. We do note, however, three factors which are significant in that analysis. First, we deem plaintiff's mental condition from 1968 until 1974 significant under the facts of this case as well as legally relevant. The plaintiff testified that the defendant "became a God" to her and that she "was dependent on him," N.T. 4–19, and that she feared displeasing him and would not question the therapy he prescribed. Her expert witness explained this dependence as a consequence of Dr. McCabe's mishandling of the psychoanalytic phenomenon known as transference. The jury certainly could have made a reasonable inference that the plaintiff's powers of judgment were impeded by Dr. McCabe's treatment and that she neither knew nor by objective standards could have known under those circumstanc-

es that the defendant's treatment of her was related to her psychological damages before 1974.

Second, we deem the reassurances of the defendant that the sexual relationship between plaintiff and defendant and the drugs he was administering were proper therapy as relevant to the issue of her discovery. While we need not reach plaintiff's contention that the statute did not run as a matter of law on the basis of these facts, they do help to define what the reasonable plaintiff would have done. This conclusion is particularly appropriate when, as here, the plaintiff has laid a solid scientific foundation through expert testimony for the conclusion that the scientific "laws of nature" intensified the impact of the defendant's conduct on the plaintiff's ability to perceive the consequences of that conduct.

■ Finally, we consider the continuing therapist-patient relationship between defendant and plaintiff, or more precisely the factual issue as to that relationship and plaintiff's strong evidence of it, until February 11, 1974, itself to be significant in determining her constructive knowledge *vel non* of his relationship to her injuries. As the defendant has pointed out, Pennsylvania does not have a "continuous treatment rule", tolling the statute of limitations in a malpractice case until the end of treatment by the defendant. *Cf. Borgia v. City of New York,* 12 N.Y.2d 151, 237 N.Y.S.2d 319, 187 N.E.2d 777 (1962). The ongoing treatment is, nevertheless, a factor which could be taken into consideration in determining what investigation of the defendant's conduct the reasonably diligent plaintiff would have made and what knowledge the reasonably diligent plaintiff would have had. *Ty-*

*minski v. United States,* 481 F.2d 257, 264–65 n. 5 (3d Cir. 1973).

The parties agree that the facts here differ significantly from those involved in most reported malpractice cases. These differences limit the utility of analogy to cases in which courts have held plaintiffs barred by the Pennsylvania statute as a matter of law. We do note, however, that such determinations have been based on actual or constructive notice that was unambiguous on the record, and that in most cases the injury and cause thereof were either of the sort easily comprehended by a layman or were directly communicated to the plaintiff. *See Bayless v. Philadelphia National League Club,* C.A. No. 76–3221 (E.D.Pa. June 21, 1977), *rev'd on other grounds,* 579 F.2d 37 (3d Cir. 1978) (plaintiff on notice of alleged back injury on day of operation for that injury); *Huber v. McElwee-Courbis Construction Co.,* 392 F.Supp. 1379, 1383 (E.D.Pa.1974) (plaintiff on notice at time of accident of injuries resulting from explosion); *Carney v. Barnett,* 278 F.Supp. 572, 575 (E.D.Pa.1967) (plaintiff on notice as of date he was admitted to hospital for thallium poisoning where he then stated his belief that such poisoning was the cause of his illness, knew he was being treated for thallium poisoning and knew where he had obtained the thallium). In a case such as this, where the central factual inquiries concern the reasonableness of plaintiff's ignorance and of her diligence under all the circumstances, and where the injury and cause thereof are subtler and more complicated than in the normal malpractice case, it seems particularly inappropriate to determine as a matter of law what the plaintiff should have known.[4]

4. Defendant has cited one case which he claims is precisely on point. In *Seymour v. Lofgreen,* 209 Kan. 72, 495 P.2d 969 (1972), the Supreme Court of Kansas upheld a trial court's dismissal of the defendant doctor, based on that state's statute of limitations, for malpractice by misuse of the transference phenomenon and sexual assault during three years of treatment. Our case and *Seymour v. Lofgreen* have striking factual similarities, but they also have important differences. In the latter case, the court

determined as a matter of law that the plaintiff had ascertained her injury by a date more than two years before the action was brought on the basis of her termination of a patient-physician relationship with the defendant and initiation of a new course of treatment. There is in our case at least a disputed issue as to whether the therapist-patient relationship terminated more than two years before the bringing of the action. In addition, the Kansas case was decided under the Kansas statute of limitations, which

## II. DAMAGES FOR FUTURE PSYCHIATRIC TREATMENT:

█ Plaintiff sought compensatory damages for future psychiatric treatment, and the jury awarded her $90,000 for such expenses. The defendant argues that that award was not supported by the evidence, and we agree that it was improper to submit this claim of damages to the jury.

█ Under the law of Pennsylvania, a plaintiff bears the burden of proof by the preponderance of evidence with regard to damages to be incurred in the future. *Wallace v. Pennsylvania Railroad Co.,* 222 Pa. 556, 561, 71 A. 1086, 1088 (1909); *Buccare v. Mennella,* 369 A.2d 806, 807 (Pa.Super. 1976). *See also Leizerowski v. Eastern Freightways, Inc.,* 514 F.2d 487, 490–91 (3d Cir. 1975). It follows that the mere possibility of future damages is insufficient proof and that such damages cannot be presumed on the basis of injury itself. *Gordon v. Trovato,* 234 Pa.Super. 279, 286, 338 A.2d 653, 657 (1975).

The plaintiff must demonstrate, accordingly, the probability of all the elements which are necessary for the future expenses to be incurred—including the fact that the treatment will be preformed as well as the fact of the injury itself. We conclude as a matter of law that the plaintiff did not demonstrate that it was probable she would undergo future psychiatric care, based on her own testimony that she would not undergo therapy and could not trust another doctor (apparently meaning therapist).

N.T. 4–43. The testimony of plaintiff's expert supported the unlikelihood that she would undergo therapy in the future by describing the difficulties that would have to be overcome in order for her to submit to such treatment. N.T. 5–99, 5–100. There was no evidence concerning the likelihood of plaintiff submitting to another kind of psychiatric care.

The only evidence from which an inference that the plaintiff is likely to undergo therapy in the future conceivably could be drawn is two-fold: her testimony that she has been able to trust and talk freely to doctors, and her expert's statement that "I hope that I could prevail upon her to accept treatment eventually." N.T. 5–100. We find these evidentiary scraps insufficient to support a finding that the plaintiff was likely, by a preponderance of the evidence, to undergo future psychiatric care.[5] Plaintiff's other contentions concerning the jury's award for future medical expenses, *e. g.,* that the award was reasonably calculated and that the parameters of future treatment necessary to arrive at the award were testified to sufficiently, are not relevant to our finding that the jury could not reasonably have concluded such future treatment was probable.

Because this element of damages should not have been submitted to the jury, we will reduce the plaintiff's verdict by the $90,000 that was awarded her for future treatment.[6]

---

provides that the limitations period can begin running at the time of injury, the time of causation of substantial injury or the time when "the fact of injury becomes reasonably ascertainable to the injured party." Kan.Stat.Ann. § 60–513(4) (1971 Supp.). The court found that the plaintiff's "injuries alleged . . . were by their nature acute and easily ascertainable." 495 P.2d at 975. The corresponding inquiry under Pennsylvania law is directed toward the time plaintiff knew or should have known of the injury *and causation by defendant's conduct.* These facts were by no means easily ascertainable to one in plaintiff's condition, for which the defendant was responsible.

**5.** This insufficiency would remain even if we were to discount, as the plaintiff urges us to do,

the force of her testimony that she would not be treated by another psychiatrist as the decision of a psychotic mind, since plaintiff bears the burden of going forward with the evidence as to damages.

**6.** Because we have concluded that the evidence did not warrant an award for these damages, we do not consider the effect of our instruction that the jury could award damages for future care if it felt she was "entitled to the opportunity" to such care. N.T. 7–17. Considered alone, this is a misstatement of Pennsylvania law; we need not decide whether it was error in the context of the entire charge to the jury or whether, if error, it was harmless in light of the rest of the instruction.

### III.  CONCLUSION:

The defendant raises in his motion various other grounds, ranging from the mundane (the impropriety of punitive damages, the excessiveness of the damage awards) to the creative (the erroneousness of sending certain documents which had been admitted into evidence out with the jury, the denial of permission for defendant's private counsel as well as counsel representing defendant's insurer to participate fully in the case).  We will deny the defendant's motion for judgment notwithstanding the verdict or for a new trial on these grounds.