Ward A. DOWNEY, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Ward A. Downey, Plaintiff,

v.

Tom W. Patterson, Ph.D., and
Colmery–O'Neil V.A. Medical
Center, Defendants.

Nos. 96–4167–RDR, 96–4183–RDR.

United States District Court,
D. Kansas.

Dec. 1, 1999.

Brock R. Snyder, Law office of Brock R. Snyder, Topeka, KS, for Plaintiff.

Nancy Landis Caplinger, Office of U.S. Atty., Stephen W. Cavanaugh, Fisher, Cavanaugh, Smith & Lemon, P.A., Topeka, KS, for Defendants.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

These cases are now before the court upon long-pending motions for summary judgment. The motions raise an issue which this court has addressed previously. Also pending before the court is a motion to certify scope of employment. To introduce the facts and contentions in this matter, the court shall begin by reiterating what was stated in the court's prior order.

These two cases are tort actions against the United States and a doctor, Dr. Tom Patterson, who has worked at the Colmery–O'Neil Veterans Administration Medical Center. The allegations in these cases are that Dr. Patterson committed

malpractice during his psychological care of plaintiff from 1982 to 1992 and that the United States is vicariously liable and negligent for failing to properly supervise Dr. Patterson. Case No. 96–4167 was filed in this court originally and listed the United States as the sole defendant. Case No. 96–4183 was filed in state court and listed Dr. Tom Patterson and the Colmery–O'Neil V.A. Medical Center as defendants. Case No. 96–4183 was removed to this court and consolidated with Case No. 96–4167. The United States was substituted as a defendant in Case No. 96–4183 for the Colmery–O'Neil Veterans Administration Medical Center and for those claims against Dr. Patterson acting within the scope of his employment. The United States filed a partial certification on January 9, 1997 which stated that Dr. Patterson was acting within the scope of his employment as to plaintiff "with respect to the allegations relating to meetings between Dr. Patterson and plaintiff outside the VA between December, 1982 to April 20, 1983." Defendant Patterson's pending motion for certification asks that the United States be substituted as a defendant for Dr. Patterson with respect to all allegations by plaintiff.

## THE COURT'S PRIOR ORDER

Previously, defendants asserted a statute of limitations defense in motions to dismiss which the court treated as motions for summary judgment. The court ruled that plaintiff was barred from making a claim based on the denial of entry into the inpatient post-traumatic stress disorder program. But, the court did not dismiss the malpractice claim on the record before it.

## CURRENT SUMMARY JUDGMENT MOTIONS

Both defendants have filed motions for summary judgment alleging that these cases must be dismissed because plaintiff's claims are barred by the statute of limitations. The court reviewed the standards governing summary judgment motions in our prior order and shall incorporate that discussion by reference.

## LIMITATION PERIOD

As stated in our prior order, under federal law a tort claim against the United States must be presented in writing to the appropriate federal agency within two years after the claim accrues. 28 U.S.C. § 2401(b). Under Kansas law, a tort claim against an individual must be brought within two years of the time that the claim accrued. K.S.A. 60–513.

■ Under *U.S. v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), a medical malpractice claim under the Federal Tort Claims Act accrues when the claimant first knows of the existence of an injury and its cause.

■ Under Kansas law, a cause of action arising from the provision of or failure to provide health care services accrues at the time of the occurrence of the act giving rise to the cause of action, unless the fact of injury is not reasonably ascertainable until some time after the initial act. If the fact of injury is not reasonably ascertainable until a later time, then the cause of action accrues when it becomes reasonably ascertainable to the injured party. However, this date cannot extend more than four years beyond the time of the act giving rise to the cause of action. K.S.A. 60–513(c).

## UNCONTROVERTED FACTS

The following facts appear uncontroverted for the purpose of the motions at issue. Plaintiff is a Vietnam war veteran with PTSD symptoms and other difficulties who first sought treatment from the Veterans Administration in December 1982. Plaintiff saw Dr. Patterson at that time and continued to see him on a weekly basis for individual therapy until April or May of 1983. At these meetings, Dr. Patterson hugged and kissed plaintiff at the start and end of the sessions. Plaintiff did not like being hugged and kissed by Dr. Patterson, and he ended the formal therapy sessions at least partially for that reason. However, plaintiff and Dr. Patterson con-

tinued to see each other over several years. This relationship extended to football games, family gatherings, fishing and lengthy telephone conversations.

Plaintiff alleges that once Dr. Patterson manipulated him into a kiss on the lips. Plaintiff claims that Dr. Patterson said plaintiff was a lousy kisser and that plaintiff responded, "I don't kiss men" and "you just make me so fucking sick I can't stand it." The kiss, in plaintiff's words, made plaintiff feel "lousy that I had finally let this son of a bitch talk me into doing something that really made me sick." He told his wife about "the kiss" and his wife advised him to "disassociate" from Dr. Patterson. Thereafter, plaintiff saw or talked with Dr. Patterson at least a couple of times. But, their personal or professional relationship ended. Although the date of "the kiss" is not firmly established in plaintiff's memory, he and Dr. Patterson stopped seeing each other in 1992. Plaintiff sought the help of another therapist, Dr. Matthews, in the fall of 1992. Dr. Patterson suggested Dr. Matthews, who is a private physician, to plaintiff. After a few visits with Dr. Matthews, plaintiff returned to the Veterans Administration and began formal therapy with Dr. James Horne. This treatment lasted from December 10, 1992 until July 1993. During this time, plaintiff told Dr. Horne that Dr. Patterson asked plaintiff to kiss him on the lips on several occasions.

Dr. Horne has filed an affidavit stating that he treated plaintiff for marital difficulties and post-traumatic stress disorder. Dr. Horne stated that plaintiff advised him that Dr. Patterson requested plaintiff to kiss him on the lips on several occasions and that on one occasion plaintiff agreed to do so. Regarding this subject, Dr. Horne further stated:

I did discuss Mr. Downey's options with him for dealing with his anger toward Dr. Patterson over the kiss incident. I advised him that continuing to internalize his anger and contemplate Dr. Patterson's conduct would not do him any good. I advised him that he could pursue the matter by making his allegations public. I told him he could make a complaint to the VA. Alternatively, I counseled he could leave it alone, put it behind him and get on with his life. The point of my advice was that Mr. Downey had choices he could make in dealing with conduct by Dr. Patterson which he believed was improper other than simply "stewing" about it.

Mr. Downey advised me that he did not wish to make any allegation against Dr. Patterson or take the matter any further and I therefore pursued it no further with him. Based upon my observation and treatment of Mr. Downey, he did not appear to have suffered any psychological injury as a result of his interactions with Dr. Patterson and I did not see a need for therapy with respect to the same.

Plaintiff has filed an affidavit stating that he did discuss with Dr. Horne the improper actions of Dr. Patterson and that Dr. Horne advised plaintiff "to forget about them and not to pursue the matter."

Dr. Horne retired in June or July 1993. Later, plaintiff began seeing Dr. Penn at the Veterans Administration. Plaintiff has asserted that he was not aware of being injured by Dr. Patterson's action until he started treatment with Dr. Penn. Plaintiff has stated:

I never realized what he [Dr. Patterson] was doing. I didn't realize that I never even knew of a terminology of patient abuse, much less being abused. I didn't have anything to go by. I thought whatever he did was the standard operating procedure. It obviously wasn't. I didn't realize how my rights had been trampled on until really I talked to Dr. Penn.

Exhibit A to United States' motion for summary judgment, p. 27. On the other hand, plaintiff stated in his deposition that he knew the hugs and kisses were "improper."

Plaintiff filed an administrative claim with the Veterans Administration on October 2, 1995.

Plaintiff asserts in this case that Dr. Patterson committed malpractice in the fall of 1982–83 and thereafter. Plaintiff further asserts that the Veterans Administration negligently failed to supervise Dr. Patterson during the entire time that plaintiff saw Dr. Patterson.

In the court's previous order, we held that there was a factual issue as to when plaintiff or a reasonable person would have known of the alleged injury from Dr. Patterson's actions and that this factual issue precluded summary judgment on the limitations issue. We stated that plaintiff's comments regarding his dislike for Dr. Patterson's kissing and hugging and his consequent decision to stop therapy with Dr. Patterson was "not the same as understanding that an injury has been caused by it."

 In essence, the instant motions for summary judgment ask the court to reconsider this holding on the basis of largely the same record, some additional case law, and the affidavit of Dr. Horne.

The court shall deny the motions for summary judgment on the following grounds. First, and most importantly, this is a fact-driven issue which, on a motion for summary judgment, must be viewed in a light most favorable to plaintiff. The results of other cases with comparable facts are not uniform. Contrast, e.g., *Simmons v. U.S.*, 805 F.2d 1363 (9th Cir.1986); *Greenberg v. McCabe*, 453 F.Supp. 765 (E.D.Pa.1978) and *Riley v. Presnell*, 565 N.E.2d 780 (Mass.1991) with *Wartell v. U.S.*, 1997 WL 599980, 124 F.3d 215 (9th Cir.1997); *P.W.P. v. L.S.*, 969 P.2d 896 (Kan.1998); and *Haggart v. Cho*, 703 A.2d 522 (1997). The facts of each case are important to each result.

Here, plaintiff has stated that he was sickened or disgusted by Dr. Patterson's alleged actions. A reasonable fact-finder could determine that a person's disgust or revulsion does not alert that person to the possibility of psychological injury. Some case law in this area does recognize that an acknowledgment of the immorality of sexual activity between a therapist and a patient is not the same as notice of psychological injury. See *Greenberg*, 453 F.Supp. at 770; *Smith v. Wallace*, 701 A.2d 86, 89 (Del.1997); see also, *Armstrong v. Lamy*, 938 F.Supp. 1018, 1040 (D.Mass.1996) (physical pain, insomnia and nervousness felt after sexual contact and attempted intercourse in context of ongoing student-teacher relationship might not be reasonable notice of injury). Similarly, plaintiff's disgust with what he perceived as possible homosexual activity might not constitute awareness of psychological damage.

Plaintiff did change therapists and eventually discussed Dr. Patterson's alleged actions with Dr. Horne. However, Dr. Horne did not observe any psychological injury as a result of plaintiff's interactions with Dr. Patterson, although he counseled plaintiff to stop "stewing" about Dr. Patterson. Consequently, a reasonable fact-finder could decide that plaintiff's sessions with Dr. Horne did not result in notice of an injury. It should be remembered that throughout the relevant period of time plaintiff suffered from PTSD symptoms and other difficulties which might complicate any determination that he was injured by the alleged actions of Dr. Patterson. We have also noted previously that the existence and cause of psychiatric injury are subtle and complicated issues.

Under these circumstances, while the issue is very close even on summary judgment, the court shall decline to hold as a matter of law that plaintiff's claim accrued more than two years before he filed his administrative claim. But, we emphasize, as we stated in our previous order, that this ruling is only made for purposes of summary judgment. We deny plaintiff's statement on page four of his response to the instant motions that we have "decided" that plaintiff was not aware of his injury until he was informed so by Dr. Penn in the Spring of 1995. We merely decided

before and we do so again that *summary judgment* cannot be granted on this point.

The new case law cited by defendants may be distinguished on the facts. In *Wartell,* the plaintiff had been told by other psychiatrists that her sexual activity with a prior therapist was destructive, but did not file a claim within two years of learning this information. In addition, plaintiff had sought help from a chaplain because she thought the therapist's conduct was harmful. By contrast, the record in the instant case, read in a light favorable to plaintiff, does not indicate that plaintiff considered Dr. Patterson's alleged conduct harmful (as opposed to revolting) or that he was told so prior to 1995. Similarly, in *P.W.P.,* the plaintiff's statements and visits to other therapists established that plaintiff was well aware of the injury she suffered from a sexual relationship with another therapist more than two years before she filed suit.

For these reasons, the court shall deny defendants' motions for summary judgment.

CERTIFICATION OF SCOPE OF EMPLOYMENT

Defendant Patterson has moved the court for an order certifying that he was within the scope of his employment with respect to all allegations asserted by plaintiff. In defendant Patterson's brief in support of this motion he lists four disputed issues of fact on this question: a) whether Patterson provided psychological services to plaintiff after April 1983; b) whether the VA knew that Patterson provided offsite and after-hours psychological services to veterans and authorized him to do so; c) can allegations of the mishandling of the transference phenomenon be separated from the psychological treatment itself in this case; and d) did Patterson act within the scope of employment when rendering opinions on the psychological benefit of plaintiff continuing to work.

The United States opposes defendant Patterson's motion to certify scope of employment and asserts that it should not be substituted as a defendant upon allegations connected to defendant Patterson's "social" relationship with plaintiff.

Both sides indicate that factual issues may exist with regard to determining scope of employment. The court agrees, particularly in light of plaintiff's claims as listed in the pretrial order. Accordingly, the court shall defer ruling upon the motion to certify scope of employment pending an evidentiary hearing upon the matter.

CONCLUSION

For the above-stated reasons, defendants' motions for summary judgment shall be denied. The court shall defer ruling upon defendant Patterson's motion to certify scope of employment pending an evidentiary hearing which shall be scheduled at a later time.

**IT IS SO ORDERED.**